**CRIMSON EXPLORATION, INC. f/k/a Gulfwest Energy, Inc., Appellant,**

v.

**INTERMARKET MANAGEMENT, LLC, M. Scott Manolis, and Kevin McMillan, Appellees.**

No. 01–08–00774–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 10, 2010.

L. Bradley Hancock, Paul Jonathan Brown, Greenberg Traurig, L.L.P., Houston, TX, for Appellant.

Leslie Garcia Ashby, Ashby LLP, Houston, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices BLAND and SHARP.

## OPINION

JIM SHARP, Justice.

Appellees, Intermarket Management, LLC, M. Scott Manolis, and Kevin McMillan (collectively "appellees"), sued appellant, Crimson Exploration, Inc., formerly known as Gulfwest Energy, Inc.,[1] on a breach of indemnity contract claim. The trial court granted appellees' summary judgment on that claim and awarded damages. The parties later agreed to the award of a certain sum of attorney's fees to appellees in that action. Crimson filed a counterclaim for a declaratory judgment. Both sides moved for summary judgment on Crimson's declaratory judgment counterclaim. The trial court denied Crimson's motion for summary judgment and granted summary judgment for appellees.

---

1. During the course of the proceedings which form the basis of this appeal, Gulfwest Energy became known as Crimson Exploration, Inc. For the sake of consistency, we will refer to appellant as Crimson throughout.

In three issues, Crimson appeals (1) the trial court's grant of summary judgment in favor of appellees on the breach of indemnity contract claim, the sum of damages awarded, and the award of attorney's fees; and (2) the trial court's grant of summary judgment in favor of appellees on Crimson's declaratory judgment claims, its rendering of a take-nothing judgment against Crimson, and its denial of Crimson's summary judgment motion on those claims. We affirm the judgment of the trial court in part, reverse in part, and remand.

## BACKGROUND

### A. The relationship between Crimson, Intermarket, and PCA, and the "PCA lawsuit"

Crimson, an oil and gas production company, had an investment banking services agreement with PetroCapital Advisors ("PCA"). Under the agreement, PCA had the right of first refusal to provide investment banking services to Crimson from April 21, 2004 through April 21, 2006. A May 2004 agreement between Crimson and PCA settling a fee dispute also specifically referenced this right. Manolis, a director of Crimson, was involved in the settlement negotiations.

After the settlement, PCA continued to provide services to Crimson, including searching for a company to acquire Crimson. Crimson subsequently hired another company, Intermarket, to also help identify potential buyers of Crimson. Intermarket had ties to two Crimson executives—Crimson director Manolis, who owned Intermarket and was its director and chief executive officer, and Crimson director and chief executive officer John Loehr, who leased office space to Intermarket.

On December 31, 2004, Crimson and Intermarket signed an advisory agreement, effective July 1, 2004, setting out their business relationship. The agreement included an indemnity clause, which provides, in relevant part

> Since [Intermarket] will be acting on behalf of [Crimson] in connection with the transactions contemplated by the Agreement, and as part of the consideration for the agreement of [Intermarket] to furnish its services pursuant to such Agreement, [Crimson] agrees to indemnify and hold harmless [Intermarket] and its affiliates and their respective officers, directors, partners, counsel, employees and agents and any other person controlling [Intermarket] or any of its affiliates and the respective agents, employees, officers, directors, partners, counsel and shareholders of such persons ( [Intermarket] and each other person being referred to as "Indemnified Person"), to the fullest extent lawful, from and against all claims, liabilities, losses, damages, and expenses (or actions in respect thereof), as incurred, related to or arising out of or in connection with (i) actions taken or omitted to be taken by [Crimson], their affiliates, employees or agents, provided, however, that [Crimson] shall not be responsible for any losses, claims, judgments, damages, liabilities or expenses of any Indemnified Person to the extent, and only to the extent, that it is finally judicially determined that they resulted from actions taken or omitted to be taken by such Indemnified Person in bad faith, fraud, deceit, breach of contract or to be due to such Indemnified Person's wantonness, neglect, negligence or gross negligence . . .

Intermarket subsequently identified Oak Tree Capital Management LLC ("Oak Tree") as a potential buyer for Crimson. Crimson chose the Oak Tree proposal over one offered by a company which had been identified and brought to Crimson by PCA.

When Oak Tree subsequently acquired majority control of Crimson, Intermarket helped Crimson obtain financing for the transaction and was paid fees for this service.

In August 2005, PCA brought suit against Intermarket, Manolis, Loehr, and McMillan [2] asserting common law and statutory fraud, negligent misrepresentation, tortious interference with contract, conspiracy, and joint enterprise. PCA alleged that Crimson, "rather than honor[ing] PCA's] right of first refusal and giv[ing] PCA the right to perform the needed investment banking services" for the Oak Tree transaction, "turn[ed] its back on its contractual obligation to PCA" and did not invite or allow PCA to perform any investment banking services for the transaction. Instead, according to PCA, Intermarket provided the investment banking services to Crimson and earned the related fees by virtue of a back-dated advisory agreement between Crimson and Intermarket. PCA alleged that this caused PCA to suffer the loss of the investment banking fees earned for the Oak Tree transaction. PCA asserted that appellees interfered with Crimson's contract with PCA regarding PCA's right of first refusal, made material false representations of fact or material omissions to PCA to induce PCA to enter into the May 2004 settlement agreement with Crimson, made negligent misrepresentations to PCA, and engaged in a joint enterprise and civil conspiracy with each other resulting in damage to PCA.

During the pendency of the PCA lawsuit, David Myers, counsel for Intermarket and McMillan, sent a letter to Crimson requesting written confirmation that Crimson would indemnify Intermarket and Kevin McMillan pursuant to the indemnity clause of the advisory agreement. Crimson did not provide any confirmation and did not agree to indemnify either Intermarket or McMillan for any of the fees, costs, or expenses incurred in PCA's lawsuit.[3] After a final take-nothing judgment was entered against PCA on all its claims,[4] Myers sent another letter demanding that Crimson pay the outstanding fees and expenses incurred by all three appellees in defense of the PCA lawsuit.

## B. The Breach of Indemnity Contract Lawsuit

### 1. Appellees' petition and Crimson's counterclaim

On October 11, 2007, appellees filed suit against Crimson for breach of contract for failing to satisfy the indemnity obligations of the advisory agreement. Crimson filed a verified denial, asserted numerous defenses, and raised a counterclaim for a declaratory judgment in which it requested the trial court to declare the parties' respective rights under the agreement, including Crimson's obligation to indemnify appellees.

### 2. The First Summary Judgment Ruling:

*Granting appellees' motion for traditional summary judgment on breach of indemnity contract claim*

Appellees filed a motion for traditional summary judgment on their breach of in-

---

**2.** McMillan was the senior vice-president of Intermarket and was actively involved in providing services to Crimson on behalf of Intermarket.

**3.** Crimson paid a portion of the fees and expenses incurred by Manolis, but there was still an additional portion outstanding after the conclusion of the case.

**4.** The claims against Manolis were dismissed for want of personal jurisdiction; the claims against Intermarket, Loehr, and McMillan were resolved by a summary judgment in their favor.

demnity contract claim asserting that the attorney's fees and expenses incurred in defense of the PCA suit fell within the scope of the indemnity agreement. Crimson responded that the indemnity provision had not been triggered because PCA sued appellees for their own individual conduct, not as the result of any conduct on the part of Crimson, and argued that there were genuine issues of material fact as to whether the PCA lawsuit was "related to, arising out of, or [connected] with" Crimson's failure to honor PCA's right of first refusal, including whether Crimson actually failed to honor PCA's right of first refusal. After a hearing on appellees' motion for summary judgment on February 4, 2008, the trial court granted the motion, signing an interlocutory order rendering judgment in favor of appellees on February 19, 2008.

Crimson filed a motion for reconsideration on March 20, 2008, arguing that summary judgment should not have been granted because there was evidence creating genuine issues of material fact as to whether indemnity arose under the agreement and because appellees relied on inadmissible evidence. After a hearing on April 4, 2008, the trial court stated that the ruling remained the same, overruled Crimson's objections to appellees' summary judgment evidence, ruled that the summary judgment evidence established the amount of attorney's fees incurred in the PCA lawsuit, and noted that the only remaining issues were the amount of attorney's fees in this suit and Crimson's counterclaim. The trial court signed an order on May 5, 2008 confirming the original grant of appellees' motion for summary judgment, overruling Crimson's objections to appellees' summary judgment evidence, and denying Crimson's motions for continuance.

### 3. The Second Summary Judgment Ruling:

### *Denying Crimson's motion for traditional summary judgment on its declaratory judgment claim*

After the trial court's ruling in February 2008 granting summary judgment against Crimson on the breach of indemnity contract claim, Crimson amended its counterclaim for declaratory judgment. Crimson's March 5, 2008 amended counterclaim asked for specific declarations interpreting the contract as it pertained to the right to indemnity in the PCA lawsuit, appellees' standing to sue Crimson, Crimson's duty to defend or reimburse appellees for attorney's fees and costs incurred in the PCA lawsuit, and Crimson's entitlement to attorney's fees and costs for bringing the declaratory judgment suit. Appellees' answer to the amended counterclaim asserted that the claims were moot and that the counterclaim was improper under the Declaratory Judgment Act because it did not assert a cause of action separate from appellees' claims and involved a one-time occurrence between the parties that was covered by appellees' claims.

After the trial court reaffirmed its intent to grant summary judgment against Crimson on appellees' breach of indemnity contract claim on April 4 2008, Crimson filed a motion seeking a traditional summary judgment on its amended declaratory judgment counterclaim. Crimson argued that it was entitled to a declaratory judgment that it was not required to reimburse appellees for the legal expenses incurred in defense of the PCA lawsuit and requested the trial court to "absolve [Crimson] of any obligation to reimburse [appellees] for the legal fees that [appellees] incurred in defending the PCA lawsuit." Appellees responded that the trial court had already twice addressed these issues in the prior

summary judgment hearings on the breach of indemnity contract claim, held on February 4 and April 4, and that Crimson's declaratory judgment claim merely denied appellees' claim and was an improper use of the Texas Declaratory Judgment Act. Crimson replied that its counterclaim raised an issue beyond that raised by the appellees, namely, Crimson's duty to defend appellees, and that appellees failed to raise a fact issue regarding Crimson's duty to defend or rebut Crimson's evidence that it did not owe appellees a duty to defend.

At the May 5, 2008 hearing on Crimson's motion for summary judgment, Crimson stated that it was "drop[ping]" its counterclaims regarding indemnity and was moving only for a declaratory judgment on their duty to defend. The trial court denied Crimson's motion for summary judgment, signing an order to that effect that same day.

### 4. The Third Summary Judgment Ruling:

*Granting appellees' motion for summary judgment on Crimson's declaratory judgment claim*

On May 12, 2008, appellees filed a motion for traditional summary judgment on Crimson's declaratory judgment counterclaim, asserting that Crimson's claims under the Texas Declaratory Judgment Act failed as a matter of law. Among appellees' assertions was that appellants had not sought a defense from Crimson and that there was no justiciable controversy related to a duty to defend. Crimson reasserted that its declaratory judgment counterclaim raised issues beyond those raised by appellees' claims, namely whether Crimson had a duty under the agreement to defend appellees, alleged that appellees could not seek reimbursement of their attorney's fees in defending the PCA lawsuit without also arguing that Crimson owed them a duty to defend, and argued that there was a fact issue as to whether appellees requested a defense of the PCA lawsuit.

After a hearing on May 15, 2008, the trial court granted the appellees' motion for summary judgment, rendered a take-nothing judgment against Crimson on its counterclaim for declaratory judgment, and noted that the issue of the amount of attorney's fees for the breach of indemnity contract lawsuit remained pending and set for trial.

### 5. The orders become final

On the day before the case was to go to trial on the question of the amount of attorney's fees to be awarded to appellees for the breach of indemnity contract suit, the parties entered into a Rule 11 agreement on the matter, with Crimson reserving its right to appeal the final judgment in full. The trial court later entered a final judgment on September 8, 2008. No motion for new trial was filed.

### DISCUSSION

Crimson raises three issues on appeal. In its first issue, it challenges the trial court's decision to grant summary judgment in favor of appellees on the breach of indemnity contract claim. In its second issue, it challenges the trial court's decision to enter a certain sum as damages in the breach of indemnity contract summary judgment and to award any attorney's fees to appellees in that suit. In its third issue, Crimson complains of the trial court's decision to deny Crimson's summary judgment motion on its declaratory judgment claim and instead grant appellees' motion for summary judgment and render a take-nothing judgment against Crimson on its declaratory judgment claim.

### A. Standard of Review

**1. Standard of review for grant or denial of motion for traditional summary judgment**

We review a trial court's decision on a motion for summary judgment de novo. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192, 199 (Tex.2007). If a trial court's order granting summary judgment does not specify the grounds upon which judgment was rendered, we must affirm the summary judgment if any of the grounds in the summary judgment motion is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000). A motion for summary judgment must stand or fall on the grounds expressly presented in the motion, *McConnell v. Southside Independent School District*, 858 S.W.2d 337, 341 (Tex.1993), and a trial court may not grant summary judgment on a ground not presented by the movant in writing. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979). Likewise, on appeal, the issues reviewed by the appellate court "must have been actually presented to and considered by the trial court." *Travis v. City of Mesquite*, 830 S.W.2d 94, 100 (Tex.1992). An appellate court should consider all the grounds for summary judgment ruled on by the trial court that were preserved by the movant and are necessary for final disposition of the appeal; an appellate court may consider, in the interest of justice, grounds that the movant preserved for review and on which the trial court did not rule. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex.1996).

Under the traditional summary judgment standard, the movant has the burden to show that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true, and every

reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon*, 690 S.W.2d at 548–49. A defendant moving for a traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). After a defendant has done so, the burden then shifts to the plaintiff to produce evidence creating a fact issue on the element or defense in order to defeat the summary judgment. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996).

## B. Summary Judgment on Breach of Indemnity Contract Claim

In their first issue, Crimson complains that appellees' are not entitled to a summary judgment requiring Crimson to indemnify appellees for attorney's fees incurred in appellees' defense of the PCA lawsuit because

(1) a claim for attorney's fees is actually a claim under a duty to defend rather than under a duty to indemnify; the trial court should have first analyzed appellees' motion for summary judgment as a duty to defend question; and Crimson had no duty to defend appellees and, therefore, no obligation to indemnify appellees for attorney's fees;

(2) appellees failed to establish their right to indemnity because appellees did not meet their burden on summary judgment to demonstrate that the expenses sought were covered by the indemnity agreement;

(3) Crimson had no duty to indemnify appellees because PCA's suit was unsuccessful and therefore appellees

suffered no damages to be indemnified; and

(4) there was no duty to indemnify because the indemnity agreement did not satisfy the express negligence and conspicuousness requirements.

### 1. Duty to defend

Crimson first argues that the trial court "failed to address the duty to defend" when considering appellees' request for indemnity, and asserts that the trial court was first required to determine that Crimson had a duty to defend appellees before it could determine that Crimson was required to indemnify appellees for attorney's fees.

A trial court may only grant summary judgment on the grounds actually raised in the written motion. *See McConnell*, 858 S.W.2d at 341; *Clear Creek Basin Auth.*, 589 S.W.2d at 677. Appellees' motion did not raise a ground seeking summary judgment on the basis of a breach of a duty to defend; appellees only sought recovery under the theory of breach of a duty to indemnify. On appeal, we are likewise limited to reviewing issues "actually presented to and considered by the trial court." *Travis*, 830 S.W.2d at 100. Our task in our de novo review is to determine whether appellees met their burden to show that no genuine issues of material fact exist and that they are entitled to judgment as a matter of law on the breach of indemnity contract ground actually raised in their written motion for summary judgment. *See* TEX.R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548.

■■■ Therefore, we determine whether Crimson had a duty to indemnify appellees for their attorney's fees in the PCA lawsuit. A contract for indemnity is analyzed under the same legal principles applicable to any other contact. *Safeco Ins. Co. of America v. Gaubert*, 829 S.W.2d 274, 281 (Tex.App.-Dallas 1992, writ denied). We must ascertain and give effect to the intent of the parties as expressed in the language of the agreement. *See id.*

■■■ Crimson essentially asserts that a party has no right to indemnity for attorney's fees unless there is first a duty to defend, and argues that, because Crimson did not have a duty to defend appellees, it had no duty to indemnify appellees for attorney's fees. The duty to defend and the duty to indemnify are "distinct and separate duties." *D.R. Horton–Texas, Ltd. v. Markel Int'l Ins. Co., Ltd.*, 300 S.W.3d 740, 743 (Tex.2009). One duty may exist without the other and, thus, although a party may not have a contractual duty to defend another party, it may still have a contractual duty to indemnify that party for defense costs. *Id.* at 743–44. "[T]he duty to indemnify is not dependent on the duty to defend" and there may be a duty to indemnify "even if the duty to defend never arises." *Id.* at 741. The duty to defend and the duty to indemnify "are independent and the existence of one does not necessarily depend on the existence or proof of the other." *Id.* at 745. This is true even when a party is seeking indemnity for the cost of its defense. *See id.* at 742, 745 (remanding case to trial court on duty to indemnify issue in claim for reimbursement of defense costs and settlement payment, after determining that insurer owed no duty to defend); *see also Garcia v. Sky Climber, Inc.*, 470 S.W.2d 261, 269–70 (Tex.Civ.App.-Houston [1st Dist.] 1971, writ ref'd n.r.e.) (holding that attorney's fees and court costs are recoverable under general "hold harmless" indemnity agreement). The applicability of each distinct duty must therefore be analyzed individually. In the case before us, the only duty in question is Crimson's duty to indemnify appellees because that is the only duty imposed by the contract.

The fact that Crimson did not contract to defend appellees does not release it from any contractual obligation that it has to indemnify appellees for the cost of their defense in the PCA lawsuit. We hold that appellees were not required to prove that Crimson had a duty to defend them before they sought to be indemnified for their defense costs. Accordingly, the trial court was not required to make any determination about a duty to defend before determining whether Crimson had a duty to indemnify appellees under the indemnity contract. See D.R. Horton–Texas, Ltd., 300 S.W.3d at 745.

We overrule this portion of Crimson's first issue.

## 2. Right to indemnity

Crimson further argues that, even if Crimson had a duty to indemnify appellees under the agreement, appellees failed to establish as a matter of law that they were entitled to indemnity for their attorney's fees and costs arising out of the PCA lawsuit. Specifically, Crimson asserts that

appellees were required to show that the PCA lawsuit against appellees "arose out of or in connection with an action taken or omitted to be taken by [Crimson]" and argues that PCA's petition "failed to allege any improper acts or omissions by [Crimson]." Crimson also contends that its "alleged failure to honor PCA's contractual right of first refusal" was not shown to be "improper or unlawful" and that there is no "causal connection" between any alleged action or omission by Crimson and the PCA lawsuit.[5]

■ The plain language of the indemnity agreement does not require the showing of any "improper" or "unlawful" act or omission by Crimson in order for appellees to be entitled to indemnity. The agreement also does not require a direct or proximate causal relationship between any acts or omissions by Crimson and any specific claims asserted against appellees. Rather, the broad language of the agreement between these parties provides that Crimson will indemnify appellees for "all

5. Under this issue, Crimson also challenges a number of documents attached to appellees' motion for summary judgment, and argues that the only evidence by appellees that can properly be considered is (1) the advisory agreement; (2) PCA's pleadings; and (3) and "portions" of the affidavits of appellees' witnesses, "subject to [Crimson's] objections." Crimson does not identify in its brief what "portions" of the affidavits are inadmissible, but the only objections discussed are that affidavits are not competent evidence of the "nature of PCA's claims" and these witnesses did not have "adequate personal knowledge to testify on the issue of PCA's state of mind when it filed its pleadings in the PCA lawsuit." We note that, before the trial court, Crimson only raised the first of these objections and made no objection to a lack of knowledge by the witnesses as to "PCA's state of mind." In fact, in its motion for reconsideration, Crimson specifically asserted that the affidavits of Manolis, Loehr, Myers and McMillan were "admissible summary judgment evidence." In any case, review of the

affidavits in question does not reveal any testimony by McMillan, Loehr, or Myers as to the nature of PCA's claims or "PCA's state of mind" when PCA filed its lawsuit. Manolis's affidavit, however, includes the following sentence, which states a legal conclusion relating to PCA's claims: "In the PCA Suit, PCA alleged claims against IML related to, arising out of and in connection with statements allegedly made by me in the April/May 2004 timeframe during settlement negotiations of a fee dispute between PCA and [Crimson]." Crimson also complains of the inadmissibility of attached pleadings by Intermarket in the PCA lawsuit and certain deposition testimony.

We need not determine whether the above portion of Manolis's affidavit, the attached Intermarket pleadings, or the deposition testimony were proper summary judgment evidence because the unobjected-to portions of the affidavits, Advisory Agreement, and PCA's Fifth Amended Petition are sufficient to support appellees' motion for summary judgment on the breach of indemnity contract claim.

claims, liabilities, losses, damages, and expenses (or actions in respect thereof), as incurred, *related to or arising out of or in connection with* (i) actions taken or omitted to be taken by [Crimson], their affiliates, employees or agents ...". (emphasis added). To "relate to" simply means to "have reference to," "concern," "pertaining to," "associated with" or "connected with." *See E.I. Du Pont De Nemours and Co. v. Shell Oil Co.*, 259 S.W.3d 800, 806 (Tex. App.-Houston [1st Dist.] 2007, pet. denied). Likewise, the term "arising out of" "means that there is simply a 'causal connection or relation,' " or "but for causation," rather than either direct or proximate causation. *See Utica National Ins. Co. v. American Indemnity Co.*, 141 S.W.3d 198, 203 (Tex. 2004). " 'Connected with' connotes an even more general nexus" than "arise out of." *See Coastal Mart Inc. v. Southwestern Bell Telephone Co.*, 154 S.W.3d 839, 845 (Tex.App.-Corpus Christi 2005, pet. granted, judgm't vacated w.r.m.). "[T]he plain meaning of 'arising from or connected with' is that" there must be "some nexus between" the actions taken or omitted to be taken by the indemnitor "and the detriment for which indemnity is sought" by the indemnitee. *See id.*

The record on summary judgment establishes some nexus between acts or omissions by Crimson and the expenses incurred by appellees in defense of PCA's claims against appellees, and that PCA's claims against appellees were "related to or arising out of or in connection with" actions or omissions by Crimson. The Ad-

visory Agreement, PCA's Fifth Amended Petition, and the unobjected-to portions of the affidavits of Loehr, McMillan, and Manolis provide evidence that (1) Crimson entered into an advisory agreement with Intermarket and paid fees to Intermarket for its work on the Oak Tree transaction; (2) PCA filed a lawsuit against appellees in which it made claims that "relate to," "arise out of," or are "in connection with" Crimson's acts of entering into the advisory agreement with Intermarket and paying fees to Intermarket for its work on the Oak Tree transaction; and (3) appellees suffered expenses defending themselves from PCA's claims that "relate to," "arise out of," or are "in connection with" Crimson's acts of entering into the advisory agreement with Intermarket and paying fees to Intermarket for its work on the Oak Tree transaction.[6] This evidence is sufficient to support appellees' burden on summary judgment to establish as a matter of law that their defense expenses in the PCA lawsuit were "related to or arising out of or in connection with" actions or omissions by Crimson so as to entitle them to indemnity for these expenses under the broad terms of this indemnity agreement.

We overrule this portion of Crimson's first issue.

### 3. Lack of damages

Crimson also argues that it had no duty to indemnify appellees for their defense expenses in the PCA lawsuit because appellees prevailed in that lawsuit and were not required to pay any damages to PCA. Crimson asserts that a duty to indemnify

---

**6.** Crimson has also directed us to deposition testimony by Manolis in which Manolis testified that Crimson honored PCA's right of first refusal. (Manolis went on to explain that Crimson's interpretation of PCA's right of first refusal was that PCA had a *non-exclusive* right to bring in investors, and, it was therefore Crimson's position that, because PCA did bring in investors, PCA's right of first refusal

was honored.) However, even if we assumed that Crimson actually honored PCA's right of first refusal, there was still evidence of a causal connection between other acts of Crimson (the entering into the advisory agreement with Intermarket and the payment of fees to Intermarket for the Oak Tree transaction) and the PCA lawsuit.

does not arise unless a plaintiff ultimately prevails on a claim covered by the policy, citing to *Don's Building Supply v. One-Beacon Ins. Co.*, 267 S.W.3d 20, 31, fn. 41 (Tex.2008) and *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 190 (Tex.App.-Houston [14th Dist.] 2004, pet. denied), and argues from this that a defendant is not entitled to recover its defense expenses in indemnity if its defense is successful.

These cases are distinguishable from the present case by the plain language of the indemnity agreements involved and stand for the unremarkable proposition that indemnity for damages cannot be established until the damages are established. However, the indemnity contract in the present case is broader than those in the cited cases; it does not provide indemnity for damages only; it also provided indemnity for all appellees' losses and expenses. Neither of the cited cases stand for the proposition asserted by Crimson—that a defendant who has contracted for indemnity for defense expenses, has no right to indemnity for those expenses if it is successful in its defense. *Cf. Patch v. Amoco Oil Co.*, 845 F.2d 571, 573 (5th Cir.1988) (commenting that indemnitee would not be held "harmless" where it was not found negligent by jury unless entitled to recover costs of litigation). We hold that appellees are not precluded from recovery of their defense expenses by their ultimate success in the PCA lawsuit.

We overrule this portion of Crimson's first issue.

### 4. Conspicuousness and express negligence requirements

Crimson's final argument is that it had no duty to indemnify appellees because the indemnity agreement failed to meet the express negligence and conspicuousness requirements.

The conspicuousness requirement mandates that something appear on the face of an indemnity agreement to attract the attention of a reasonable person. *See Dresser Indus., Inc. v. Page Petroleum*, 853 S.W.2d 505, 508–09 (Tex. 1993). The express negligence requirement is not an affirmative defense, but merely a rule of contract interpretation providing that parties seeking to indemnify the indemnitee against liability for its own negligence, must clearly state that intent within the agreement itself. *See Fisk Elec. Co. v. Constructors & Associates, Inc.*, 888 S.W.2d 813, 814–15 (Tex.1994); *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex.1987).

We disagree with both of Crimson's challenges. The indemnity agreement in this case is on a separate page from the main agreement, has its own heading, and includes its own signature line. Similarly, the indemnity agreement clearly sets out the intent that Crimson indemnify appellees for "all" losses and expenses absent a "final judicial determination" that the losses or expenses resulted "from actions taken or omitted to be taken by [appellees] in bad faith, fraud, deceit, breach of contract or [were] due to such [appellees'] wantonness, neglect, negligence or gross negligence." There is no such final judicial determination in this case. We hold that the indemnity agreement does not violate either the conspicuousness or express negligence requirement.

We overrule this portion of Crimson's first issue.

Having overruled all of Crimson's arguments pertaining to the grant of appellees' summary judgment on the breach of indemnity contract claim, we overrule Crimson's first issue.

## C. Damages and Attorney's Fees Awarded in Breach of Indemnity Contract Claim

In its second issue, Crimson first argues that the trial court erred in the damages awarded in the summary judgment on appellees' breach of indemnity contract claim because there was no evidence that the amount of attorney's fees incurred in the PCA lawsuit was reasonable. Crimson then argues that, because appellees were not entitled to the attorney's fees awarded as damages, they were not entitled to the award of attorney's fees in this lawsuit.

We interpret Crimson's first assertion as an argument that appellees' summary judgment proof was insufficient to prove the amount of damages as a matter of law because it did not include any evidence establishing the reasonableness of the attorney's fees claimed as expenses in the PCA lawsuit.[7] Appellees do not dispute that they provided no evidence of the reasonableness of their attorney's fees damages on summary judgment, but respond that they only needed to prove the amount of expenses that they incurred in defense of their suit, not whether the attorney's fees that made up a portion of those expenses were reasonable. Alternatively, appellees argue that the trial court could have taken judicial notice of the usual and customary fees for the services provided, relying on *First National Accep-*

tance Company v. Bishop, 187 S.W.3d 710 (Tex.App.-Corpus Christi 2006, no pet.).

We disagree with the latter contention. Generally, the reasonableness of attorney's fees is a question of fact that must be determined by the fact-finder and be supported by competent evidence. *See Great Am. Reserve Ins. Co. v. Britton,* 406 S.W.2d 901, 906 (Tex.1966). *First National's* holding ultimately rests on section 38.004 of the Texas Civil Practice and Remedies Code which permits the trial court to take judicial notice of the usual and customary fees. *See* Tex. Civ. Prac. & Rem.Code Ann. § 38.004 (Vernon 2008); *see also id.* § 38.003 (providing rebuttable presumption that usual and customary fees for claim of type described in section 38.001 are reasonable). However, that section is not applicable in a request for attorney's fees that is not made under section 38.001 of the Texas Civil Practice and Remedies Code. *See id.;* Tex. Civ. Prac. & Rem.Code Ann. § 38.001 (Vernon 2008); *Charette v. Fitzgerald,* 213 S.W.3d 505, 515 (Tex.App.-Houston [14th Dist.] no pet.); *Hasty, Inc. v. Inwood Buckhorn Joint Venture,* 908 S.W.2d 494, 503 (Tex. App.-Dallas 1995, writ denied). Because the attorney's fees at issue were not awarded under section 38.001, but rather as damages, then the trial court could not take judicial notice of the usual and customary fees in making its award.

---

7. Appellees assert that Crimson has failed to preserve this issue because Crimson did not make a specific challenge in either its response to the motion for summary judgment or its motion for reconsideration to the lack of evidence of the reasonableness of the attorney's fees sought as damages. However, Crimson was not required to object in the trial court to the insufficiency of appellees' summary judgment proof supporting the award of attorney's fees as damages in order to preserve this challenge for appellate review; such a complaint may be raised for the first time on appeal. *See Rhone–Poulenc, Inc.*

*v. Steel,* 997 S.W.2d 217, 223 (Tex.1999) (holding that, on appeal, a non-movant "need not have answered or responded to the motion [for summary judgment] to contend that the movant's summary judgment proof is insufficient as a matter of law to support summary judgment."); *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979) ("Summary judgments must stand on their own merits, and the non-movant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the movant's right.").

Regarding appellees' broader argument that they were not required to show the reasonableness of the attorney's fees recovered in indemnity, Crimson cites to several cases which, although involving the payment of attorney's fees pursuant to an indemnity clause, nevertheless either required that there be a showing that the fees be reasonable or reviewed the record to determine if there was evidence of reasonableness. *See Sieber & Calicutt, Inc. v. La Gloria Oil & Gas Co.,* 66 S.W.3d 340, 350–51 (Tex.App.-Tyler 2001, pet. denied); *Tenneco Oil Co. v. Gulsby Engineering, Inc.,* 846 S.W.2d 599, 607 (Tex.App.-Houston [14th Dist.] 1993, writ denied); *Carroll v. Paetznick,* 603 S.W.2d 381, 383 (Tex.Civ. App.-Austin 1980, no writ). This Court has done likewise. *See Devon SFS Operating, Inc. v. First Seismic Corp.,* No. 01–04–00077–CV, 2006 WL 374257, at *11–12 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (memo. op.). Here, the attorney's fees are within the control of the parties seeking indemnification and therefore are subject to a reasonableness test. "Reasonableness is the determining factor for attorney's fees," which are governed under the Rules of Professional Conduct. *Id.* at 12.

We hold that, because appellees did not provide proof of the reasonableness of the attorney's fees claimed as damages in the breach of indemnity contract claim, appellees failed to prove, as a matter of law, the sum to which they were entitled as damages. We grant Crimson's second issue. We reverse the award of damages in the breach of indemnity contract claim (*i.e.,* the attorney's fees and costs [8] incurred in defense of the PCA lawsuit), and, accordingly, the award of attorney's fees in this suit. *See State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 437 (Tex.1995) (requiring that party both prevail on cause of action for which attorney's fees are recoverable and recover damages before attorney's fees may be awarded under section 38.001). We remand this cause to the trial court for a determination of appellees' damages in the breach of indemnity contract claim (costs and reasonable attorney's fees incurred in defense of the PCA lawsuit) as well as a determination of attorney's fees, if any, to be awarded in this suit.

## D. Take-nothing Summary Judgment on Declaratory Judgment Claim

In its final issue, Crimson complains that the trial court erred in entering a take-nothing summary judgment against it on Crimson's "duty to defend" declaratory judgment claim rather than entering a declaratory summary judgment in Crimson's favor. Crimson specifically asserts that its claim for a declaratory judgment on its "duty to defend" liability under the indemnity agreement presented an issue beyond that raised in appellees' claims for which it would have "ongoing exposure under the indemnity portions of the Advisory Agreement" and thus a declaratory judgment on its duty to defend under the agreement would have been proper. *See Indian Beach Prop. Owners' Ass'n v. Linden,* 222 S.W.3d 682, 702 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (holding that declaratory judgment counterclaim seeking interpretation of deed restrictions, filed in lawsuit regarding breach of deed restrictions, was not simply denial of plaintiff's cause of action, but affirmative claim for relief, and therefore proper subject of declaratory

---

8. Because the evidence at trial also did not establish what portion of the damages awarded was costs and what portion was attorney's fees, we vacate the entire amount of damages awarded and instruct the trial court to segregate in its judgment any award of costs incurred in the PCA lawsuit from any award of attorney's fees incurred in the PCA lawsuit.

judgment; deed restrictions involved ongoing and continuous relationship between parties and declaration would define parties' obligations under deed restrictions in future).

 Declaratory judgments are reviewed under the same standards applicable to other judgments; thus, the denial or grant of a declaratory judgment in a summary judgment is reviewed under summary judgment standards. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.010 (Vernon 2008); *Lidawi v. Progressive County Mutual Ins. Co.*, 112 S.W.3d 725, 730 (Tex. App.-Houston [14th Dist.] 2003, no pet.). Although a denial of summary judgment is not normally reviewable, we may review such a denial when both parties move for summary judgment and the trial court grants one and denies the other. *See Tex. Mun. Power Agency*, 253 S.W.3d at 192. In our review of such cross-motions, we review the summary judgment evidence presented by each party, determine all questions presented, and render judgment as the trial court should have rendered. *Id.* (citing *Comm'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex.1997)).

 A trial court may not render a declaratory judgment unless there is a justiciable controversy between the parties that will actually be resolved by the declaration sought. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.008 (Vernon 2008); *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex.1995). A "justiciable controversy" requires a "real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Id.* (internal quotations and citations omitted). We have already held that Crimson's duty to indemnify appellees for expenses, including attorney's fees, is distinct from any duty to defend and that the dispute between the parties involved only the duty to indemnify. There is no justici-

able controversy between the parties regarding any duty to defend. We hold that Crimson was not entitled to a declaratory judgment and the trial court properly entered a take-nothing summary judgment against Crimson on this claim. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.008; *Beadle*, 907 S.W.2d at 467.

We overrule Crimson's third issue.

## CONCLUSION

We reverse the trial court's award of damages of attorney's fees and costs in the PCA lawsuit, and the award of attorney's fees for the breach of indemnity contract case. We remand this cause to the trial court for further proceedings in accordance with this opinion. We affirm the trial court's judgment in all other respects.