**Affirmed in part, Reversed and Remanded in part, and Memorandum Opinion filed December 31, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00240-CV

### LINDA CAROL GOEHRS, Appellant

### V.

### U.S. SPECIALTY INSURANCE COMPANY, Appellee

**On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 2017-00802**

## M E M O R A N D U M   O P I N I O N

Appellant Linda Goehrs appeals a summary judgment against her on an indemnity agreement. Appellee U.S. Specialty Insurance Company issued a surety bond for the benefit of Goehrs, conditioned on Goehrs's agreement to indemnify U.S. Specialty for certain damages it incurred by reason of the bond, including attorney's fees and expenses. Alleging it incurred such damages and that Goehrs refused demands for indemnity, U.S. Specialty sued to enforce the indemnity

agreement. The trial court granted U.S. Specialty's motion for summary judgment, denied Goehrs's motion for summary judgment, and awarded U.S. Specialty $255,432.01 in damages, including attorney's fees and expenses as well as bond premiums U.S. Specialty contends were unpaid.

Goehrs attacks the summary judgment on several grounds. First, she argues that the indemnity agreement is invalid due to a mutual mistake. Second, Goehrs contends the trial court's damages award is error because (1) U.S. Specialty, as the movant, did not conclusively establish its attorney's fees and unpaid bond premiums, and (2) alternatively, Goehrs raised a genuine issue of material fact as to the reasonableness and necessity of attorney's fees and expenses.

We conclude that the trial court correctly granted summary judgment in U.S. Specialty's favor on liability because U.S. Specialty conclusively established its right to judgment, and Goehrs failed to raise a fact question on her mutual mistake affirmative defense. However, as to damages, U.S. Specialty was required to prove that its claimed attorney's fees and expenses were reasonable and necessary, but it failed to do so. Accordingly, we affirm the judgment in part, reverse in part only as to attorney's fees and expenses, and remand the case for further proceedings.

## Background

In June 2008, a Harris County probate court appointed Goehrs temporary guardian pending contest of the person and estate of Mary Olive Calkins and ordered that letters of temporary guardianship be issued to Goehrs upon issuance of a surety bond. The same day, Goehrs applied for a surety bond from U.S. Specialty. As part of the bond application, Goehrs signed an "INDEMNITY AGREEMENT," in which she:

2

agree[d] to pay the Company the usual annual premiums; and . . . agree[d] to indemnify and keep indemnified the Company from and against any liability and all costs, charges, suits, damages, counsel fees and expenses of whatever kind or nature which said Company shall at any time sustain or incur, for or by reason, or in consequence of said Company having become surety or entering into such bond or bonds and agree[d] to place the Company in funds to meet any claim or demand before it shall be required to make payment.

U.S. Specialty then issued a $500,000 bond, which it subsequently increased to $3.2 million upon order of the probate court.

In December 2008, Carolyn James, the daughter of Mary Olive Calkins, sued Goehrs based on Goehrs's alleged acts or omissions while serving as temporary guardian; James later added U.S. Specialty as a party and asserted claims against the bond. According to U.S. Specialty, James alleged that Goehrs committed numerous wrongful acts or omissions, including wasting and mismanaging Calkins's estate, misapplying Calkins's assets, breach of fiduciary duty, professional negligence, negligence, and legal malpractice.[1] James sought damages for the value of the cash and property that Goehrs, directly or indirectly, allegedly misappropriated, converted, or lost. U.S. Specialty retained counsel to defend itself against James's attempt to possibly exhaust the penal limit of the bond.

---

[1] The pleadings from the underlying probate-related litigation are not included in our record. U.S. Specialty requests that we take judicial notice of the proceedings, but we need not do so. Goehrs does not dispute any of U.S. Specialty's factual characterizations of the probate-related proceedings. In fact, Goehrs in her response to U.S. Specialty's motion for summary judgment asserted, "Plaintiff has outlined the lawsuits in detail in its Motion for Summary Judgment," and on appeal Goehrs cites to U.S. Specialty's description of the probate-related litigation in its summary judgment motion. In the absence of a dispute, we will accept U.S. Specialty's factual characterizations as true. *See* Tex. R. App. P. 38.1(g) ("In a civil case, the court will accept as true the facts stated unless another party contradicts them.").

In May 2009, the probate court signed an order finding that the court had not acquired jurisdiction over the person and estate of Mary Olive Calkins until January 27, 2009. In that order, the court indicated that it would, upon motion or hearing, determine if any orders prior to January 27, 2009, were "not void." The probate court later found that all previous orders signed prior to January 27, 2009, were void, except for an order appointing an attorney ad litem and an order appointing a court investigator, neither of which concerns Goehrs, the surety bond, or the indemnity agreement at issue.

U.S. Specialty sent Goehrs three written indemnity demands. The final demand, sent in December 2015, requested $161,405.35 in attorney's fees and expenses incurred through that date and $54,754 in unpaid bond premiums. Goehrs rejected all demands, arguing that the June 2008 order appointing her temporary guardian was void and, therefore, the indemnity agreement executed as part of the surety bond application was also void or otherwise invalid.

Mary Olive Calkins died in 2015. In 2017, the administrator of her estate initiated another proceeding in probate court against Goehrs and U.S. Specialty, asserting a claim against the bond. Upon U.S. Specialty's motion, the probate court dismissed the claim against U.S. Specialty three months later.

U.S. Specialty filed the present suit against Goehrs, alleging that Goehrs had breached the indemnity agreement.[2] U.S. Specialty sought to recover all amounts expended in defense of the bond-related litigation and the unpaid bond premiums, as well as attorney's fees, interest, and court costs. Goehrs denied U.S. Specialty's claims, asserted numerous defenses including mutual mistake, and sought a

---

[2] U.S. Specialty's petition alternatively captioned its breach of contract claim as "exoneration" or "collateralization," but the nature of U.S. Specialty's allegations sound solely in contract.

declaration of non-liability under the indemnity agreement. Goehrs alleged that, at the time she signed the indemnity agreement, both parties mistakenly believed she had been legally appointed temporary guardian when in fact the court's order appointing her was void; this mistake, in turn, rendered the indemnity agreement void.

The parties filed competing motions for summary judgment. U.S. Specialty argued that Goehrs was liable under the indemnity agreement in two respects: (1) by failing to indemnify the surety for its incurred costs under the bond; and (2) by failing to pay annual premiums on the bond since 2008. U.S. Specialty sought a total of $255,432.01, consisting of attorney's fees and expenses incurred in defending itself against all claims made under the bond, unpaid premiums, and attorney's fees incurred in prosecuting the present suit. Goehrs opposed U.S. Specialty's motion on two grounds: (1) the indemnity agreement is invalid pursuant to the doctrine of mutual mistake; and (2) U.S. Specialty failed to conclusively prove its entitlement to damages. Goehrs also moved for summary judgment in her favor on the sole basis that the mutual mistake doctrine rendered the agreement void and unenforceable.

The trial court granted U.S. Specialty's motion in its entirety and denied Goehrs's motion. The court awarded U.S. Specialty damages in the amount of $255,432.01, conditional appellate attorney's fees, and prejudgment and postjudgment interest. Goehrs appeals.

## Analysis

Goehrs challenges the trial court's rulings in three issues. In her first two issues, she argues that the trial court erred in granting U.S. Specialty's motion for summary judgment and in denying hers. According to Goehrs, her mutual mistake defense defeats U.S. Specialty's motion for summary judgment and, additionally,

5

entitles Goehrs to summary judgment as a matter of law. In her third issue, Goehrs argues that the trial court erred in awarding $255,432.01 to U.S. Specialty, because the evidence was legally insufficient to support the award or, alternatively, because she raised a fact question on damages.

## A. Standard of review

We review the trial court's summary judgment rulings de novo. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Lane-Valente Indus. (Nat'l), Inc. v. J.P. Morgan Chase, N.A.*, 468 S.W.3d 200, 204 (Tex. App.—Houston [14th Dist.] 2015, no pet.). In doing so, we take all evidence favorable to the nonmovant as true, indulging every reasonable inference and resolving any doubts in her favor. *Provident Life*, 128 S.W.3d at 215.

When both sides move for summary judgement and the trial court grants one motion and denies the other, we review both sides' summary judgment evidence to determine all questions presented. *Lane-Valente*, 468 S.W.3d at 204. A movant is entitled to summary judgment if it establishes that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Id.* If the movant's motion and summary judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *Gray v. Entis Mech. Servs., L.L.C.*, 343 S.W.3d 527, 529 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

## B. Goehrs's motion for summary judgment on mutual mistake

We first address Goehrs's argument that she is not liable under the indemnity agreement pursuant to the mutual mistake doctrine. *See Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999) (per curiam) ("Generally, when a party presents multiple grounds for reversal of a judgment on

6

appeal, the appellate court should first address those points that would afford the party the greatest relief."). "A mutual mistake of fact occurs when the parties to an agreement have a common intention, but the written agreement does not accurately reflect that intention due to a mutual mistake." *Wyrick v. Bus. Bank of Tex., N.A.*, 577 S.W.3d 336, 350 (Tex. App.—Houston [14th Dist.] 2019, no pet. h.). The elements of mutual mistake are: (1) a mistake of fact; (2) held mutually by the parties; (3) which materially affects the agreed-on exchange. *Id.* The mistake must relate to the subject matter of the contract involved and not to a matter that is collateral or incidental to that contract. *See De Monet v. PERA*, 877 S.W.2d 352, 357 (Tex. App.—Dallas 1994, no writ).

"Pursuant to the doctrine of mutual mistake, when parties to an agreement have contracted under a misconception or ignorance of a material fact, the agreement will be avoided." *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). However, only under "narrow circumstances" will a party be able to raise a fact issue to set aside a contract based on mutual mistake. *See id.* at 265. "The doctrine of mutual mistake must not routinely be available to avoid the results of an unhappy bargain." *Id.*

We agree with Goehrs that it is clear she operated under the mistaken belief that she had lawfully been appointed temporary guardian when she sought and obtained the surety bond from U.S. Specialty. But we disagree that this mistake, even if held by both parties, involved the subject matter of the indemnity agreement. The indemnity agreement makes no reference to Goehrs's appointment as guardian, nor is the agreement conditioned upon Goehrs's lawful appointment.[3]

---

[3] Goehrs heavily emphasizes language included in the bond, which was "CONDITIONED THAT THE ABOVE BOUND PRINCIPAL [Goehrs], *WHO HAS BEEN APPOINTED Temporary Guardian* (pending contest) of the Person and ESTATE OF Mary Olive Calkins, Incapacitated Person, SHALL WELL AND TRULY PERFORM THE DUTIES

7

While Goehrs's appointment surely motivated her to seek the bond and, in doing so, agree to indemnify the surety, there is nothing to indicate that Goehrs's appointment as guardian induced both parties to enter into the indemnification agreement. *See Morris v. Ashland-Katy Co.*, No. 14-91-00557-CV, 1992 WL 141136, at *4 (Tex. App.—Houston [14th Dist.] June 25, 1992, no writ) (not designated for publication) (proponent must show that the mistake was mutual and that it was a material inducement to the transaction). There is certainly no evidence that U.S. Specialty considered Goehrs's lawful appointment a material term of the indemnification agreement. *See Durham v. Uvalde Rock Asphalt Co.*, 599 S.W.2d 866, 870 (Tex. App.—San Antonio 1980, no writ) (no evidence of mutual mistake when there was no evidence to indicate that knowledge of mistake would have caused one party not to enter into the contract).

On this record, we hold that Goehrs has not conclusively proven the defense of mutual mistake. Accordingly, she did not meet her burden to establish her entitlement to judgment as a matter of law, and the trial court did not err in denying her motion for summary judgment. We overrule Goehrs's second issue.

## C. U.S. Specialty's motion for summary judgment on the indemnity agreement

U.S. Specialty sued Goehrs for breach of the indemnity agreement and moved for summary judgment on that ground. A successful breach of contract claim requires proof of (a) a valid contract, (b) performance or tendered performance by the plaintiff, (c) breach of the contract by the defendant, and (d) damages sustained by the plaintiff as a result of that breach. *M7 Capital LLC v. Miller*, 312 S.W.3d 214, 220 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

---

REQUIRED OF HER BY LAW UNDER SAID APPOINTMENT." (Emphasis added). Goehrs's reliance is misplaced. The contractual agreement at issue is the indemnity agreement, not the bond.

In support of its claim, U.S. Specialty attached a copy of the indemnity agreement, a copy of the executed bond, and affidavits from U.S. Specialty's attorneys, who testified that the bond accrued annual premiums, that U.S. Specialty incurred costs to defend several claims against the bond and to enforce the indemnity agreement, that the surety made payment demands upon Goehrs, and that Goehrs refused to pay.

First, we address U.S. Specialty's entitlement to judgment on the first three elements of its claim—a valid contract, performance, and breach. U.S. Specialty's evidence facially established its right to judgment as a matter of law on these elements. The burden then shifted to Goehrs to raise a genuine issue of material fact on one of these elements, *see Allison v. Serv. Lloyds Ins. Co.*, 437 S.W.3d 589, 593 (Tex. App.—Houston [14th Dist.] 2014, pet. denied), or present evidence on each element of an affirmative defense such as mutual mistake, *see Lunsford Consulting Grp., Inc. v. Crescent Real Estate Funding VIII, L.P.*, 77 S.W.3d 473, 475 (Tex. App.—Houston [1st Dist.] 2002, no pet.). In the trial court, Goehrs did not challenge the validity of the indemnity agreement (apart from her mutual mistake argument), U.S. Specialty's performance under the contract, or her failure to comply with the agreement. Further, as explained above, Goehrs did not present evidence that both parties to the contract considered Goehrs's lawful appointment a material term of the bargain. For these reasons, Goehrs failed to raise a fact issue either as to U.S. Specialty's proof of liability or as to her mutual mistake affirmative defense, and she therefore failed to defeat U.S. Specialty's entitlement to judgment as a matter of law on the liability elements of its breach of contract claim. We overrule in part Goehrs's first issue.

Next, we address the final element of U.S. Specialty's breach of contract claim: damages. In her first and third issues, Goehrs asks this court to reverse the

trial court's summary judgment and specifically challenges U.S. Specialty's evidence of damages. Among other arguments, Goehrs argues that U.S. Specialty failed to meet its initial summary judgment burden that its requested attorney's fees, costs, and expenses were reasonable and necessary. Goehrs also argues that U.S. Specialty presented insufficient evidence of unpaid bond premiums.

1.     *Attorney's fees and expenses*

The purpose of indemnity for attorney's fees, such as other fee-shifting mechanisms, is to compensate the prevailing party generally for its losses resulting from the litigation process. *See generally In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 173 (Tex. 2013) (orig. proceeding) (although attorney's fees ordinarily are not awarded as damages, they can be viewed as compensating the prevailing party for its losses because the award helps make the party whole); *see also Jordan v. Centerpoint Energy Houston Elec., LLC*, No. 14-18-00663-CV, 2019 WL 5565978, at *9 (Tex. App.—Houston [14th Dist.] Oct. 29, 2019, no pet. h.) (mem. op.) ("The purpose of indemnity is to make a party whole.").

When fee-shifting is authorized by contract, as it is here, the party seeking the fee award must prove the reasonableness and necessity of the requested attorney's fees. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 487 (Tex. 2019). Even when an indemnity agreement does not explicitly restrict recovery only to those fees and expenses reasonably and necessarily incurred, we generally imply such a limit. *See Kurtz v. Kurtz*, 158 S.W.3d 12, 18 & n.6 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *Tenneco Oil Co. v. Gulsby Eng'g, Inc.*, 846 S.W.2d 599, 606-07 (Tex. App.—Houston [14th Dist.] 1993, writ denied); *In re B.N.L.-B.*, 375 S.W.3d 557, 566 (Tex. App.—Dallas 2012, pet. denied); *Crimson Expl., Inc. v. Intermarket Mgmt., LLC*, 341 S.W.3d 432, 446 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Sieber & Calicutt, Inc. v.*

10

*La Gloria Oil & Gas Co.*, 66 S.W.3d 340, 350-51 (Tex. App.—Tyler 2001, pet. denied). To determine the amount of attorney's fees to be awarded, Texas follows the lodestar method, which is essentially a "short hand version" of the *Arthur Andersen* factors.[4] *Rohrmoos Venture*, 578 S.W.3d at 496. The lodestar method requires the fact finder to derive reasonable attorney's fees by first determining the reasonable hours spent by counsel in the case and the reasonable hourly rate for counsel's work. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). The fact finder then multiplies the number of hours counsel worked on the case by the applicable rate, the product of which is the base fee or lodestar. *Id.*[5]

It is the fee claimant's burden to provide sufficient evidence of both the reasonable hours worked and the reasonable hourly rate. *Rohrmoos Venture*, 578 S.W.3d at 498. Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services. *See id.*; *see also City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013) (per curiam) ("In *El Apple*, we said that a lodestar calculation requires certain basic proof, including itemizing specific tasks, the time required for those tasks, and the rate charged by the person performing the work.").

Conclusory or general testimony devoid of specifics will not support a fee award. The Supreme Court of Texas consistently has held that evidence of attorney's fees was insufficient under the lodestar method when counsel failed to indicate how the aggregate time spent in the case was devoted to any particular

---

[4] *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

[5] The base fee is presumed to reflect the reasonable and necessary attorney's fees, though the fact finder may adjust the lodestar up or down if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case. *Rohrmoos Venture*, 578 S.W.3d at 500-01.

tasks or category of tasks. *See Rohrmoos Venture*, 578 S.W.3d at 505; *Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014) (per curiam); *Montano*, 414 S.W.3d at 736; *El Apple*, 370 S.W.3d at 763.

With this in mind, we turn to U.S. Specialty's evidence offered in support of its claimed damages. U.S. Specialty submitted an affidavit from its attorney, Gregory Weinstein, who testified as an expert on U.S. Specialty's reasonable and necessary attorney's fees. Weinstein testified that: he reviewed invoices to determine whether the tasks performed were reasonable and necessary; it was his opinion that the tasks performed were reasonable and necessary; attorneys and paralegals worked a total of 700.70 hours; the billing rates ranged from $185.00 to $295.00; and the billing rates for the attorneys and paralegals were reasonable and necessary charges in Harris County for legal services in probate surety litigation matters. As for the services performed by counsel, Weinstein testified generally that the work included, *inter alia*: analysis and legal research; attending docket control conferences; preparing a plea to the jurisdiction, a motion to dismiss, and other unspecified pleadings; preparing for and attending hearings; extensive communications with opposing counsel and representatives of the surety; and preparing written discovery. Weinstein testified that U.S. Specialty incurred a total of $150,030.50 in attorney's fees and $18,807.51 in costs of court and expenses.

Like in *El Apple* and *Rohrmoos Venture*, Weinstein did not indicate how the hours the attorneys and paralegals spent in the aggregate were devoted to any particular task or category of tasks. *El Apple*, 370 S.W.3d at 763-65; *Rohrmoos Venture*, 578 S.W.3d at 505. Moreover, he did not present time records or otherwise substantiate the specific tasks performed, the time required for those tasks, and the rate charged by each person performing the work. *El Apple*, 370 S.W.3d at 765. In sum, Weinstein's testimony is too general to establish that the

requested fees and expenses were reasonable and necessary. *Rohrmoos Venture*, 578 S.W.3d at 505.

We hold that U.S. Specialty failed to conclusively prove the reasonableness and necessity of its attorney's fees and expenses as part of the damages element of its breach-of-contract claim. We therefore sustain in part Goehrs's first and third issues and reverse the trial court's judgment solely as it pertains to the amount of U.S. Specialty's attorney's fees and expenses.

2.    *Unpaid bond premiums*

Finally, Goehrs contends that U.S. Specialty presented legally insufficient proof of the amount of bond premiums Goehrs owed and failed to pay. The extent of Goehrs's argument on appeal is:

> The disputed summary judgment evidence further does not support an award of claimed unpaid bond fees when there was no valid appointment. Though the Surety claims a lump sum as unpaid bond premiums for unspecified years at unspecified rates, the trial court apparently included the requested sum with the disputed attorneys' fees, another basis for reversal and remand.

U.S. Specialty presented affidavit testimony that Goehrs owed, but did not pay, $70,398 in bond premiums. In response, Goehrs argued that U.S. Specialty did not present proof of an annual rate or the years that she failed to pay. But in the absence of controverting evidence or a sustainable objection,[6] the lack of an annual rate or the failure to specify the length of time the debt accrued does not render U.S. Specialty's affidavit legally insufficient. *See, e.g.*, *Tex. Commerce Bank, Nat'l Ass'n v. New*, 3 S.W.3d 515, 517 (Tex. 1999) (per curiam)

---

[6] Goehrs lodged several objections to U.S. Specialty's affidavit in the trial court, all of which the court overruled, but she does not reassert those objections or explain why the trial court erred in its rulings, and so we do not consider the objections on appeal.

("Testimony of the total amount due under a written instrument is legally sufficient to support an award of that amount.").

We overrule this part of Goehrs's third issue.

**Conclusion**

U.S. Specialty did not meet its burden of proof regarding the damage element of its breach of contract claim as to its reasonable and necessary attorney's fees and expenses. We therefore reverse in part the trial court's summary judgment in U.S. Specialty's favor, and we remand the case to the trial court solely for redetermination of attorney's fees and expenses in accordance with this opinion. We affirm the judgment in all other respects.


/s/        Kevin Jewell
                Justice


Panel consists of Justices Jewell, Bourliot, and Zimmerer.