OPINION
Opinion by
Justice GARZA.
This is a contract dispute between Coastal Mart, Inc., Coastal Market, Ltd. d/b/a Maverick Markets (collectively “Coastal”) and Southwestern Bell Telephone Company (“SWBT”). Underlying this dispute are wrongful death and survival actions filed against Coastal and SWBT by Guadalupe Ordonez and Maria Esparza for damages arising from the death of their daughter, Blanche Esparza. Ordo-nez and Esparza alleged that their child was killed due to the negligence of Coastal and SWBT in the design, placement, operation, and maintenance of SWBT pay phones in front of a convenience store operated by Coastal.[1] Ordonez eventually settled his claim with Coastal and SWBT, and the trial court ultimately issued a take-nothing judgment against Esparza. Before these actions were resolved, Coastal filed a cross-action against SWBT based on a license agreement executed by Coastal and SWBT that dealt with the pay phones involved in Blanche’s death. The trial court entered a final summary judgment in favor of SWBT on Coastal’s cross-action, and this appeal ensued. We affirm in part, see Tex.R.App. P. 43.2(a), and reverse and remand in part. See Tex.R.App. P. 44.1(b).

Issues on Appeal/Standard of Review

According to Coastal’s cross-action, SWBT was obligated to indemnify Coastal for the claims alleged by the plaintiffs in the underlying actions, and in addition, SWBT was obligated to provide insurance for and defend Coastal against the plaintiffs’ claims. Coastal’s cross-action is thus primarily a claim for breach of contract; however, it also asserts that SWBT acted in bad faith as an insurance company, which is an extra-contractual claim. See Aranda v. Ins. Co. of N. Am., 748 S.W.2d 210, 212 (Tex.1988) (“[The] duty of good faith and fair dealing arises out of the special trust relationship between the insured and the insurer.”). Coastal moved for summary judgment on both claims, as did SWBT.
Coastal raises four issues on appeal. It argues that the trial court erred by award *829 ing summary judgment to SWBT and not awarding summary judgment to Coastal because, as a matter of law, the evidence showed that (1) SWBT owed Coastal a duty to indemnify and hold Coastal harmless, (2) SWBT owed Coastal a duty to maintain insurance and to defend Coastal, (3) SWBT breached the license agreement, and (4) SWBT acted in bad faith. Coastal also asserts that it is entitled to reasonable attorney’s fees under the civil practice and remedies code. See Tex. Civ. Prac. & Rem. Code Ann.'§ 38.001 (Vernon 1997).
Appellate courts review summary judgments de novo. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex.1994); Tex. Commerce Bank-Rio Grande Valley, N.A. v. Correa, 28 S.W.3d 723, 726 (Tex.App.-Corpus Christi 2000, pet. denied). When both sides move for summary judgment and the trial court grants one side’s motion without specifying its reasons, as in this case, the appellate court must review the motions and evidence and render the judgment that the trial court should have rendered. Comm’rs Court v. Agan, 940 S.W.2d 77, 81 (Tex.1997).

I. Duty to Indemnify

We begin with whether SWBT had a duty to indemnify Coastal under the license agreement. Indemnity agreements are construed under the normal rules of contract construction. Assoc. Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 284 (Tex.1998). The interpretation of an unambiguous contract is a question of law for the court to decide. N.M. Uranium, Inc. v. Moser, 587 S.W.2d 809, 814 (Tex.Civ.App.-Corpus Christi 1979, writ ref'd n.r.e.); see also Perry v. Houston Indep. Sch. Dist., 902 S.W.2d 544, 547 (Tex.App.-Houston [1st Dist.] 1995, writ dism’d w.o.j.). Unambiguous contracts are enforced as written. See, e.g., Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex.1996). When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument is a question of fact for the jury. Reilly v. Rangers Mgmt., Inc., 727 S.W.2d 527, 529 (Tex.1987). Whether a contract is ambiguous is a question of law. See Nat’l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex.1995) (per curiam); see also Vermillion Constr. Co. v. Fid. & Deposit Co., 526 S.W.2d 744, 748 (Tex.Civ.App.-Corpus Christi 1975, no writ). If a written contract is worded so that it can be given a definite or certain legal meaning, then it is unambiguous. Nat’l Union, 907 S.W.2d at 520; see also Coker v. Coker, 650 S.W.2d 391, 393 (Tex.1983); Universal CIT Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154, 157 (Tex.1951). An ambiguity does not arise simply because the parties offer conflicting interpretations. Lopez v. Munoz, Hockema & Reed, 22 S.W.3d 857, 861 (Tex.2000); Kelley-Coppedge, Inc. v. Highlands, 980 S.W.2d 462, 465 (Tex.1998). Rather, a contract is ambiguous only if two or more meanings are genuinely possible after application of the pertinent rules of interpretation to the face of the instrument. Daniel, 243 S.W.2d at 157. Parol evidence is not admissible for the purpose of creating an ambiguity. Highlands, 980 S.W.2d at 464. Only when a contract is first determined to be ambiguous may the court admit extraneous evidence to determine the true meaning of the instrument. Id.
The starting point of our inquiry is the operative language of the license agreement that creates and specifies the scope of SWBT’s duty to indemnify:
SWBT shall indemnify and hold COASTAL ... free and harmless from and against any and all claims, liabilities, losses, hens, demands, damages, and causes of action of every particular character and kind ... which COASTAL may at any time suffer, incur, or sustain, *830 arising from or connected with SWBT’s obligations hereunder....
This language limits SWBT’s duty to indemnify to events “arising from or connected with SWBT’s obligations” under the license agreement. We must therefore examine SWBT’s obligations under the license agreement to determine if SWBT’s duty to indemnify has been triggered. The relevant language is as follows:
SWBT [has] the right, obligation and license to install, operate, maintain and service public telephone(s) and associated equipment.... The location of the Public Telephone Equipment at each premises shall be mutually agreed upon between COASTAL and SWBT in order to satisfy considerations of safety and discouragement of undesirable utilization.
According to this language, SWBT had an obligation to place its telephone equipment in a location that satisfied “considerations of safety.”
The next question is whether the claims against Coastal and SWBT “arise from” or are “connected with” SWBT’s obligation to “satisfy considerations of safety.” The claims alleged that Coastal and SWBT were negligent for having “public telephones placed in the unobstructed path of vehicular traffic.” On their face, these claims “arise from” and are “connected with” SWBT’s obligation to place its telephone equipment in a location that satisfied “considerations of safety.”
SWBT argues that the claims do not “arise from” and are not “connected with” SWBT’s obligations because (1) its “on-site obligations were strictly limited to installing, operating, maintaining and servicing the three pay phones”; and (2) “the injury sustained by Blanche was caused, both factually and legally, solely by the criminal actions of Mr. Godinez, not by SWBT.” SWBT contends that “phrases such as ‘arise from’ in an indemnity agreement are to be narrowly construed.” In particular, SWBT argues that “where an indemnitor’s work or service under a contract is limited in nature and performed in a safe manner and injury results due to the negligence of the indemnitee or a third party, the injury does not ‘arise from’ and is not ‘connected with’ the indemnitor’s performance under the contract.” See Brown & Root, Inc. v. Serv. Painting Co., 437 S.W.2d 630 (Tex.Civ.App.-Beaumont 1969, writ ref'd).
In a separate point, SWBT emphasizes that “it is not the allegations in a case but the actual facts of the case that matter” in deciding whether a duty to indemnify exists. See Ingersoll-Rand Co. v. Valero Energy Corp., 997 S.W.2d 203, 210 (Tex.1999) (“The facts that entitle an indemni-tee to seek indemnification through suit come into existence when the indemnitee’s liabilities become fixed and certain by judgment.”); Am. Alliance Ins. Co. v. Frito-Lay, Inc., 788 S.W.2d 152, 153-54 (Tex.App.-Dallas 1990, writ dism’d). SWBT points out that Coastal voluntarily settled its claim with Guadalupe Ordonez and argues that Coastal thereby “destroyed any forum for determining who was at fault.” See Man GHH Logistics GMBH v. Emscor, Inc., 858 S.W.2d 41, 43-44 (Tex.App.-Houston [14th Dist.] 1993, no writ).
SWBT further argues that “[t]he duty to indemnify attaches only upon a finding of liability, not by virtue of mere allegations.” See Ingersoll-Rand, 997 S.W.2d at 205 (“We adhere to the longstanding rule that a claim based on a contract that provides indemnification from liability does not accrue until the indemnitee’s liability becomes fixed and certain, as by rendition of a judgment.”). SWBT argues that the take-nothing judgment against Maria Es-parza precluded a contractual duty to indemnify from arising.
We take this last point first. Neither SWBT’s motions for summary judg *831 ment nor its response to Coastal’s motion for summary judgment argued that the judgment entered against Maria Esparza precluded SWBT’s contractual duty to indemnify from arising.[2] Notably, summary judgment was entered against Maria Es-parza on August 1, 2001, well before SWBT filed its response to Coastal’s motion for summary judgment on October 26, 2001 and well before the trial court’s final judgment of November 13, 2001.[3] SWBT thus had ample opportunity to raise this contention but failed to do so. The “No liability = No Indemnity” argument is being made for the first time on appeal.[4] It therefore cannot be considered as a basis for upholding the trial court’s summary judgment. See City of Mission v. Ramirez, 865 S.W.2d 579, 581 (Tex.App.-Corpus Christi 1993, no writ) (“Summary judgments may not be affirmed or reversed on grounds not expressly set forth in the motions presented to the trial court.”).
SWBT also failed to preserve the “No Liability = No Indemnity” argument as to the action filed by Guadalupe Ordonez. SWBT’s motions and response made no argument that Coastal’s settlement with Ordonez precluded contractual indemnification, even though Coastal settled its claim with Ordonez in 2000. Consequently, that argument cannot be considered as a ground for affirming the summary judgment for SWBT. See id.
We now evaluate SWBT’s chief argument against contractual indemnity: the underlying claims do not “arise from” and are not “connected with” SWBT’s performance under the contract. As a preliminary matter, we disagree that the contract’s “arising from or connected with” language requires a determination that SWBT’s actions constitute a legal or factual cause of the “claims, liabilities, losses, etc.” for which indemnity is sought. Instead, the plain meaning of “arising from or connected with” is that Coastal must establish some nexus between SWBT’s obligations under the contract and the detriment for which indemnity is sought. The nexus need not necessarily amount to direct or proximate causation. See Utica Nat'l Ins. Co. v. Am. Indem. Co., 141 S.W.3d 198, 203 (Tex.2004) (“ ‘[Ajrising out of are words of much broader significance than ‘caused by.’ ”). In fact, the Texas Supreme Court has held that “arise out of’ simply means that there is “a casual connection or relation.” See id. “Connected with” connotes an even more general nexus.
We conclude that Coastal established a sufficient nexus between SWBT’s obligations under the contract and the loss for which it seeks indemnity. SWBT was obligated to “satisfy considerations of safety.” The wrongful death and survival actions for which Coastal seeks indemnity dealt directly with whether that obligation had been met (i.e., whether Coastal and SWBT *832 were negligent for having “public telephones placed in the unobstructed path of vehicular traffic”). We therefore conclude that the actions “arise from” and are “connected with” SWBT’s obligations under the contract. In reaching this conclusion, we note that by its own language, the indemnity provision applies “regardless of the joint or concurrent negligence of COASTAL.” Therefore, it is of no consequence that Coastal shared SWBT’s obligation to satisfy considerations of safety.
Coastal established as a matter of law that SWBT had a duty to indemnify Coastal. Coastal was therefore entitled to summary judgment on this claim. Coastal’s first issue is sustained.

II. Duties to Maintain Insurance and to Defend

In its second issue, Coastal contends that paragraph 19 of the license agreement created an obligation on the part of SWBT to maintain insurance for Coastal and to defend it against the underlying claims.
In relevant part, paragraph 19 reads:
SWBT shall maintain or shall require and be responsible for ensuring that its contractors and agents maintain at all times during the term of this Agreement insurance satisfactory to COASTAL ... to protect SWBT and COASTAL from and against all claims, demands, and causes of action arising by reason of SWBT’s access to COASTAL’S premises....
Such insurance shall be considered primary insurance, and all insurance carried by COASTAL shall be considered secondary in relation thereto. Any and all deductibles in the required insurance policies shall be assumed by, for the account of, and at the sole risk of SWBT.
Texas courts follow the “Eight Corners” or “Complaint Allegation” rule when determining whether a duty to provide insurance or a duty to defend exists. See Am. Alliance, 788 S.W.2d at 153. This rule requires that only the allegations in the petition and the terms of the insurance policy be considered in determining whether a duty to provide insurance or a duty to defend exists. Feed Store, Inc. v. Reliance Ins. Co., 774 S.W.2d 73, 74 (Tex.App.Houston [14th Dist.] 1989, writ denied). In this case, there is a license agreement, but there is no insurance policy. Consequently, we cannot apply the “Eight Corners” rule per se. Instead, we use the traditional rules of contract construction; however, because the duties to provide insurance and defend are triggered by the lawsuit, and not its ultimate outcome, we must consider the license agreement in light of the allegations of the petitions filed by Ordonez and Esparza. See id. at 75 (“[W]e have no business passing on the actual outcome of the ... litigation.”); see also Am. Alliance, 788 S.W.2d at 154 (“The duty to defend is not affected by facts ascertained before suit, developed in the process of litigation, or by the ultimate outcome of the suit.”).
We agree that the language of paragraph 19 created a duty for SWBT to maintain insurance, the express purpose of which was to protect SWBT and Coastal from and against all claims, demands, and causes of action arising by reason of SWBT’s access to Coastal’s premises. The pivotal issue is whether the claims, demands, and causes of action underlying this case arose “by reason of SWBT’s access to Coastal’s premises.” We hold that they did. The plaintiffs in the underlying case alleged that their child was killed due to the negligence of Coastal and SWBT in the design, placement, operation, and maintenance of SWBT’s pay phones. As noted above, SWBT had the “right, obligation and license to install, operate, maintain and service public telephone(s) and *833 associated equipment” on Coastal’s premises. In addition, the license agreement provides: “If any Public Telephone Equipment appears to constitute a hazard ..., SWBT will be allowed to make adjustments or modifications in an attempt to alleviate the concern.” To this end, the license agreement granted “SWBT and its service representatives, agents and employees reasonable access to the Premises for installing, servicing, repairing and maintaining the Public Telephone Equipment. ...” In short, SWBT had a right to access Coastal’s premises to alleviate safety concerns and maintain the pay phones. This access was directly implicated by the plaintiffs’ allegations, which complained of the design, placement, operation, and maintenance of the pay phones on Coastal’s premises. Accordingly, we conclude that SWBT was obligated to provide Coastal with insurance.
In reaching this conclusion, we emphasize that the issue before this Court is not whether SWBT should be liable to Guadalupe Ordonez or Maria Esparza or whether its actions caused Blanche’s death as a matter of law. The issue is whether the claims, demands, and causes of action filed by Ordonez and Esparza arose by reason of SWBT’s access to Coastal’s premises. Based on the allegations of the plaintiffs’ petitions, we conclude that they did.
Next, we must determine whether SWBT had a duty to defend Coastal against the underlying lawsuits. See Reser v. State Farm Fire & Cas. Co., 981 S.W.2d 260, 264 (Tex.App.-San Antonio 1998, no pet.) (“The duty to defend and the duty to indemnify are separate and distinct duties.”). We conclude that it did not. There is no language in the license agreement requiring SWBT to defend Coastal. SWBT had a duty to maintain insurance “to protect ... Coastal from and against all claims,” but that duty was a duty to maintain insurance and not a duty to defend. Coastal’s reply brief cites Mid-Century Ins. Co. v. Lindsey for the proposition that SWBT’s “insurance would necessarily afford Coastal a defense in the proper circumstances”; however, Lindsey does not support such a proposition. See Mid-Century Ins. Co. v. Lindsey, 997 S.W.2d 153, 156 (Tex.1999). The sole issue in Lindsey was “whether the underinsured motorist provision of a standard Texas personal auto policy covers the insured’s bodily injuries resulting from the unintentional discharge of a shotgun on a gun rack in a pickup truck parked nearby.” Id. at 154.
Although the insurance SWBT was obligated to maintain may have provided Coastal with a defense, nothing in the license agreement contemplated a separate obligation for SWBT to defend Coastal. Coastal was entitled to a defense only to the extent of SWBT’s duty to maintain insurance. SWBT was entitled to judgment as a matter of law on the issue of failure to defend and Coastal was entitled to judgment as a matter of law on the issue of failure to maintain insurance. Accordingly, we overrule Coastal’s second issue as it relates to the duty to defend and sustain Coastal’s second issue as it relates to the duty to maintain insurance.

III. Breach of Contract

In its third issue, Coastal argues that SWBT breached the license agreement by failing to defend, indemnify, and maintain insurance for Coastal. The elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages to the plaintiff resulting from the breach. Ford v. City State Bank of Palacios, 44 S.W.3d 121, 137 (Tex.App.-Corpus Christi 2001, no pet.). Coastal’s motion established its en *834 titlement to summary judgment on its breach of contract claim. Coastal proved the existence of a valid contract, which it performed and SWBT breached by failing to indemnify Coastal and to maintain insurance. Coastal also proved that it suffered damages: it did not receive indemnity and insurance benefits. We therefore hold that Coastal was entitled to judgment as a matter of law on its claim for breach of contract. Coastal’s third issue is sustained.

IV. Bad Faith

In its fourth issue, Coastal argues that SWBT acted in bad faith as an insurance company. SWBT, in contrast, maintains that there is no evidence that it (1) acted as an insurance company or (2) acted in bad faith. We agree with SWBT. Although we have concluded that SWBT had a duty to maintain insurance, Coastal provided the trial court with no basis for imposing a duty of good faith and fair dealing on SWBT. Accordingly, SWBT was entitled to judgment as a matter of law on Coastal’s bad faith claim. We overrule Coastal’s fourth issue.

Conclusion

The judgment of the trial court is affirmed in part, see Tex.R.App. P. 43.2(a), and reversed and remanded in part. See Tex.R.App. P. 44.1(b). Specifically, Coastal is entitled to judgment as a matter of law on its claim for breach of contract and reasonable attorney’s fees under chapter 38 of the civil practice and remedies code. See Tex. Civ. PRAC. & Rem.Code Ann. § 38.001 (Vernon 1997). Because fact issues remain as to the amount of damages to which Coastal is entitled on these claims, see Tex.R. Civ. P. 166a (stating that summary judgment is proper even if fact issues exist as to damages), the case is remanded to the trial court for further proceedings consistent with this opinion and necessary to resolve the questions of fact on the issue of damages. See Tex. R.App. P. 44.1(b).
Concurring Opinion by Justice ERRLINDA CASTILLO.

. On June 6, 1995, six year old Blanche Es-parza was standing outside of a Coastal store and allegedly using a SWBT pay phone when she was hit by a pick-up truck driven by a drunk driver named Procoro Godinez. She died of her injuries four days later.

. SWBT filed two motions for summary judgment: one on June 26, 2001 regarding Coastal’s claim for indemnification, and a second on August 23, 2001 regarding Coastal's claims for breach of contract (based on failure to maintain insurance and failure to defend), contribution, and statutory indemnity.

. The order of August 1, 2001 granted final summary judgment to Coastal on all claims asserted by Maria Esparza. Earlier, on July 26, 2001, the court had issued a similar order granting final summary judgment to SWBT on Esparza’s claims.

.Although SWBT did, in fact, make "no liability" arguments to the trial court in its motion filed on August 23, 2001, those arguments were made regarding Coastal’s claims for insurance and defense, contribution, and statutory indemnity. The arguments were not made as to Coastal’s claim for contractual indemnity. In particular, SWBT did not argue that a contractual duty to indemnify can arise only upon a judgment of liability, which is its argument on appeal.