Opinion issued November 10, 2010.

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-08-00774-CV

———————————

Crimson Exploration, Inc. f/k/a Gulfwest Energy, Inc., Appellant

V.

Intermarket
Management, LLC, M. Scott Manolis, and Kevin McMillan, Appellees



 



 

On Appeal from the 127th District Court 

Harris County, Texas



Trial Court Case No. 2007-62887

 



O P I N I O N

Appellees, Intermarket Management,
LLC, M. Scott Manolis, and Kevin McMillan (collectively “appellees”), sued appellant,
Crimson Exploration, Inc., formerly known as Gulfwest Energy, Inc.,[1]
on a breach of indemnity contract claim. 
The trial court granted appellees’ summary judgment on that claim and
awarded damages.  The parties later
agreed to the award of a certain sum of attorney’s fees to appellees in that
action.  Crimson filed a counterclaim for
a declaratory judgment.  Both sides moved
for summary judgment on Crimson’s declaratory judgment counterclaim.  The trial court denied Crimson’s motion for
summary judgment and granted summary judgment for appellees.  

In three issues, Crimson appeals (1)
the trial court’s grant of summary judgment in favor of appellees on the breach
of indemnity contract claim, the sum of damages awarded, and the award of
attorney’s fees; and (2) the trial court’s grant of summary judgment in favor
of appellees on Crimson’s declaratory judgment claims, its rendering of a
take-nothing judgment against Crimson, and its denial of Crimson’s summary
judgment motion on those claims.  We affirm
the judgment of the trial court in part, reverse in part, and remand. 

Background

A.      The
relationship between Crimson, Intermarket, and PCA, and the “PCA lawsuit” 

Crimson, an oil and gas production
company, had an investment banking services agreement with PetroCapital
Advisors (“PCA”).  Under the agreement, PCA
had the right of first refusal to provide investment banking services to
Crimson from April 21, 2004 through April 21, 2006.  A May 2004 agreement between Crimson and PCA
settling a fee dispute also specifically referenced this right.  Manolis, a director of Crimson, was involved
in the settlement negotiations.  

After the settlement, PCA continued
to provide services to Crimson, including searching for a company to acquire
Crimson.  Crimson subsequently hired
another company, Intermarket, to also help identify potential buyers of
Crimson.  Intermarket had ties to two
Crimson executives—Crimson director Manolis, who owned Intermarket and
was its director and chief executive officer, and Crimson director and chief
executive officer John Loehr, who leased office space to Intermarket.  

On December 31, 2004, Crimson and
Intermarket signed an advisory agreement, effective July 1, 2004, setting out
their business relationship.  The
agreement included an indemnity clause, which provides, in relevant part 

Since [Intermarket] will be acting on behalf of
[Crimson] in connection with the transactions contemplated by the Agreement,
and as part of the consideration for the agreement of [Intermarket] to furnish
its services pursuant to such Agreement, [Crimson] agrees to indemnify and hold
harmless [Intermarket] and its affiliates and their respective officers,
directors, partners, counsel, employees and agents and any other person
controlling [Intermarket] or any of its affiliates and the respective agents,
employees, officers, directors, partners, counsel and shareholders of such
persons ([Intermarket] and each other person being referred to as “Indemnified
Person”), to the fullest extent lawful, from and against all claims,
liabilities, losses, damages, and expenses (or actions in respect thereof), as
incurred, related to or arising out of or in connection with (i) actions taken
or omitted to be taken by [Crimson], their affiliates, employees or agents,
provided, however, that [Crimson] shall not be responsible for any losses,
claims, judgments, damages, liabilities or expenses of any Indemnified Person
to the extent, and only to the extent, that it is finally judicially determined
that they resulted from actions taken or omitted to be taken by such
Indemnified Person in bad faith, fraud, deceit, breach of contract or to be due
to such Indemnified Person’s wantonness, neglect, negligence or gross
negligence . . . 

Intermarket subsequently identified
Oak Tree Capital Management LLC (“Oak Tree”) as a potential buyer for
Crimson.  Crimson chose the Oak Tree
proposal over one offered by a company which had been identified and brought to
Crimson by PCA.  When Oak Tree subsequently
acquired majority control of Crimson, Intermarket helped Crimson obtain
financing for the transaction and was paid fees for this service.   

In August 2005, PCA brought suit
against Intermarket, Manolis, Loehr, and McMillan[2]
asserting common law and statutory fraud, negligent misrepresentation, tortious
interference with contract, conspiracy, and joint enterprise.  PCA alleged that Crimson, “rather than
honor[ing PCA’s] right of first refusal and giv[ing] PCA the right to perform
the needed investment banking services” for the Oak Tree transaction, “turn[ed]
its back on its contractual obligation to PCA” and did not invite or allow PCA
to perform any investment banking services for the transaction.  Instead, according to PCA, Intermarket
provided the investment banking services to Crimson and earned the related fees
by virtue of a back-dated advisory agreement between Crimson and Intermarket.  PCA alleged that this caused PCA to suffer
the loss of the investment banking fees earned for the Oak Tree transaction.  PCA asserted that appellees interfered with
Crimson’s contract with PCA regarding PCA’s right of first refusal, made
material false representations of fact or material omissions to PCA to induce
PCA to enter into the May 2004 settlement agreement with Crimson, made
negligent misrepresentations to PCA, and engaged in a joint enterprise and
civil conspiracy with each other resulting in damage to PCA.  

During the pendency of the PCA
lawsuit, David Myers, counsel for Intermarket and McMillan, sent a letter to
Crimson requesting written confirmation that Crimson would indemnify
Intermarket and Kevin McMillan pursuant to the indemnity clause of the advisory
agreement. Crimson did not provide any confirmation and did not agree to indemnify
either Intermarket or McMillan for any of the fees, costs, or expenses incurred
in PCA’s lawsuit.[3]  After a final take-nothing judgment was
entered against PCA on all its claims,[4]
Myers sent another letter demanding that Crimson pay the outstanding fees and
expenses incurred by all three appellees in defense of the PCA lawsuit.

B.      The
Breach of Indemnity Contract Lawsuit 

          1.       Appellees’
petition and Crimson’s counterclaim

On October 11, 2007, appellees filed
suit against Crimson for breach of contract for failing to satisfy the
indemnity obligations of the advisory agreement. Crimson filed a verified
denial, asserted numerous defenses, and raised a counterclaim for a declaratory
judgment in which it requested the trial court to declare the parties’
respective rights under the agreement, including Crimson’s obligation to
indemnify appellees. 

2.       The
First Summary Judgment Ruling:

Granting appellees’ motion for
traditional summary judgment on breach of indemnity contract claim

 

          Appellees
filed a motion for traditional summary judgment on their breach of indemnity
contract claim asserting that the attorney’s fees and expenses incurred in
defense of the PCA suit fell within the scope of the indemnity agreement.  Crimson responded that the indemnity
provision had not been triggered because PCA sued appellees for their own
individual conduct, not as the result of any conduct on the part of Crimson,
and argued that there were genuine issues of material fact as to whether the
PCA lawsuit was “related to, arising out of, or [connected] with” Crimson’s
failure to honor PCA’s right of first refusal, including whether Crimson
actually failed to honor PCA’s right of first refusal.  After a hearing on appellees’ motion for
summary judgment on February 4, 2008, the trial court granted the motion,
signing an interlocutory order rendering judgment in favor of appellees on February
19, 2008.

Crimson filed a motion for
reconsideration on March 20, 2008, arguing that summary judgment should not
have been granted because there was evidence creating genuine issues of
material fact as to whether indemnity arose under the agreement and because
appellees relied on inadmissible evidence. 
After a hearing on April 4, 2008, the trial court stated that the ruling
remained the same, overruled Crimson’s objections to appellees’ summary
judgment evidence, ruled that the summary judgment evidence established the
amount of attorney’s fees incurred in the PCA lawsuit, and noted that the only
remaining issues were the amount of attorney’s fees in this suit and Crimson’s
counterclaim.  The trial court signed an
order on May 5, 2008 confirming the original grant of appellees’ motion for summary
judgment, overruling Crimson’s objections to appellees’ summary judgment
evidence, and denying Crimson’s motions for continuance.




 

3.       The
Second Summary Judgment Ruling:

 

Denying Crimson’s motion for traditional
summary judgment on its declaratory judgment claim    

 

          After
the trial court’s ruling in February 2008 granting summary judgment against
Crimson on the breach of indemnity contract claim, Crimson amended its
counterclaim for declaratory judgment. 
Crimson’s March 5, 2008 amended counterclaim asked for specific
declarations interpreting the contract as it pertained to the right to indemnity
in the PCA lawsuit, appellees’ standing to sue Crimson, Crimson’s duty to
defend or reimburse appellees for attorney’s fees and costs incurred in the PCA
lawsuit, and Crimson’s entitlement to attorney’s fees and costs for bringing the
declaratory judgment suit.  Appellees’
answer to the amended counterclaim asserted that the claims were moot and that the
counterclaim was improper under the Declaratory Judgment Act because it did not
assert a cause of action separate from appellees’ claims and involved a
one-time occurrence between the parties that was covered by appellees’
claims.  

          After
the trial court reaffirmed its intent to grant summary judgment against Crimson
on appellees’ breach of indemnity contract claim on April 4 2008, Crimson filed
a motion seeking a traditional summary judgment on its amended declaratory
judgment counterclaim.  Crimson argued
that it was entitled to a declaratory judgment that it was not required to
reimburse appellees for the legal expenses incurred in defense of the PCA
lawsuit and requested the trial court to “absolve [Crimson] of any obligation
to reimburse [appellees] for the legal fees that [appellees] incurred in
defending the PCA lawsuit.”  Appellees
responded that the trial court had already twice addressed these issues in the
prior summary judgment hearings on the breach of indemnity contract claim, held
on February 4 and April 4, and that Crimson’s declaratory judgment claim merely
denied appellees’ claim and was an improper use of the Texas Declaratory
Judgment Act.  Crimson replied that its
counterclaim raised an issue beyond that raised by the appellees, namely,
Crimson’s duty to defend appellees, and that appellees failed to raise a fact
issue regarding Crimson’s duty to defend or rebut Crimson’s evidence that it
did not owe appellees a duty to defend.

          At the
May 5, 2008 hearing on Crimson’s motion for summary judgment, Crimson stated
that it was “drop[ping]” its counterclaims regarding indemnity and was moving only
for a declaratory judgment on their duty to defend.  The trial court denied Crimson’s motion for
summary judgment, signing an order to that effect that same day.   

4.       The
Third Summary Judgment Ruling:

 

Granting appellees’ motion for summary
judgment on Crimson’s declaratory judgment claim    

 

          On May
12, 2008, appellees filed a motion for traditional summary judgment on
Crimson’s declaratory judgment counterclaim, asserting that Crimson’s claims
under the Texas Declaratory Judgment Act failed as a matter of law.  Among appellees’ assertions was that appellants
had not sought a defense from Crimson and that there was no justiciable
controversy related to a duty to defend. 
Crimson reasserted that its declaratory judgment counterclaim raised
issues beyond those raised by appellees’ claims, namely whether Crimson had a
duty under the agreement to defend appellees, alleged that appellees could not
seek reimbursement of their attorney’s fees in defending the PCA lawsuit
without also arguing that Crimson owed them a duty to defend, and argued that
there was a fact issue as to whether appellees requested a defense of the PCA
lawsuit.   

          After a hearing on May 15, 2008, the
trial court granted the appellees’ motion for summary judgment, rendered a
take-nothing judgment against Crimson on its counterclaim for declaratory
judgment, and noted that the issue of the amount of attorney’s fees for the
breach of indemnity contract lawsuit remained pending and set for trial. 

          5.       The orders become final

          On
the day before the case was to go to trial on the question of the amount of
attorney’s fees to be awarded to appellees for the breach of indemnity contract
suit, the parties entered into a Rule 11 agreement on the matter, with Crimson
reserving its right to appeal the final judgment in full.  The trial court later entered a final
judgment on September 8, 2008.  No motion
for new trial was filed.




 

Discussion

          Crimson
raises three issues on appeal.  In its
first issue, it challenges the trial court’s decision to grant summary judgment in favor of
appellees on the breach of indemnity contract claim.  In its second issue, it challenges the trial
court’s decision to enter a certain sum as damages in the breach of indemnity
contract summary judgment and to award any attorney’s fees to appellees in that
suit.  In its third issue, Crimson complains
of the trial court’s decision to deny Crimson’s summary judgment motion on its
declaratory judgment claim and instead grant appellees’ motion for summary
judgment and render a take-nothing judgment against Crimson on its declaratory
judgment claim.   

A.      Standard
of Review

1.       Standard
of review for grant or denial of motion for traditional summary judgment

          We review a trial court’s decision on
a motion for summary judgment de novo.  See
Tex. Mun. Power Agency v. Pub. Util. Comm’n of Tex., 253 S.W.3d 184, 192,
199 (Tex. 2007).    If a trial court’s order granting summary judgment
does not specify the grounds upon which judgment was rendered, we must affirm the
summary judgment if any of the grounds in the summary judgment motion is
meritorious.  FM Props. Operating Co.
v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).  A motion for summary judgment must stand or fall on the
grounds expressly presented in the motion, McConnell v. Southside Independent
School District, 858 S.W.2d 337, 341 (Tex. 1993), and a trial court may not
grant summary judgment on a ground not presented by the movant in writing.  City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 677 (Tex. 1979). 
Likewise, on appeal, the issues reviewed by the appellate court “must
have been actually presented to and considered by the trial court.”  Travis v. City of Mesquite, 830 S.W.2d
94, 100 (Tex. 1992).  An appellate court
should consider all the grounds for summary judgment ruled on by the trial
court that were preserved by the movant and are necessary for final disposition
of the appeal; an appellate court may consider, in the interest of justice,
grounds that the movant preserved for review and on which the trial court did
not rule.  Cincinnati Life Ins. Co. v.
Cates, 927 S.W.2d 623, 626 (Tex. 1996).

          Under the traditional summary judgment
standard, the movant has the burden to show that no genuine issues of material
fact exist and that it is entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., Inc., 690
S.W.2d 546, 548 (Tex. 1985).  In deciding
whether there is a disputed material fact issue precluding summary judgment,
evidence favorable to the non-movant will be taken as true, and every
reasonable inference must be indulged in favor of the non-movant and any doubts
resolved in its favor.  Nixon, 690
S.W.2d at 548–49.  A defendant
moving for a traditional summary judgment must conclusively negate at least one
essential element of each of the plaintiff’s causes of action or conclusively
establish each element of an affirmative defense.  Sci. Spectrum, Inc. v. Martinez,
941 S.W.2d 910, 911 (Tex. 1997).  After a defendant has
done so, the burden then shifts to the plaintiff to produce evidence creating a
fact issue on the element or defense in order to defeat the summary
judgment.  See Walker v. Harris,
924 S.W.2d 375, 377 (Tex. 1996).

B.      Summary Judgment on Breach
of Indemnity Contract Claim

In their first issue, Crimson
complains that appellees’ are not entitled to a summary judgment requiring
Crimson to indemnify appellees for attorney’s fees incurred in appellees’
defense of the PCA lawsuit because 

(1)     a claim
for attorney’s fees is actually a claim under a duty to defend rather than
under a duty to indemnify; the trial court should have first analyzed
appellees’ motion for summary judgment as a duty to defend question; and
Crimson had no duty to defend appellees and, therefore, no obligation to
indemnify appellees for attorney’s fees; 

(2)     appellees failed to establish their right to
indemnity because appellees did not meet their burden on summary judgment to
demonstrate that the expenses sought were covered by the indemnity agreement;

(3)     Crimson had no duty to indemnify appellees
because PCA’s suit was unsuccessful and therefore appellees suffered no damages
to be indemnified; and

(4)     there was
no duty to indemnify because the indemnity agreement did not satisfy the
express negligence and conspicuousness requirements. 




 

1.       Duty to defend 

Crimson first argues that the trial court “failed to address the duty to
defend” when considering appellees’ request for indemnity, and asserts that the
trial court was first required to determine that Crimson had a duty to defend
appellees before it could determine that Crimson was required to indemnify
appellees for attorney’s fees.

A trial court may only grant summary judgment on the grounds actually
raised in the written motion.  See McConnell,
858 S.W.2d at 341; Clear Creek Basin Auth., 589 S.W.2d at 677.  Appellees’ motion did not raise a ground
seeking summary judgment on the basis of a breach of a duty to defend;
appellees only sought recovery under the theory of breach of a duty to
indemnify.  On appeal, we are likewise
limited to reviewing issues “actually presented to and considered by the trial
court.”  Travis, 830 S.W.2d at 100.  Our task in our de novo review is to
determine whether appellees
met their burden to show that no genuine issues of material fact exist and that
they are entitled to judgment as a matter of law on the breach of indemnity
contract ground actually raised in their written motion for summary
judgment.  See Tex. R. Civ. P. 166a(c);
Nixon, 690 S.W.2d at 548.  

Therefore, we determine whether Crimson had a duty to indemnify appellees
for their attorney’s fees in the PCA lawsuit. 
A contract for indemnity is analyzed under the same legal principles
applicable to any other contact.  Safeco Ins. Co. of America v. Gaubert,
829 S.W.2d 274, 281 (Tex. App.—Dallas 1992, writ denied).   We must ascertain and give effect to the
intent of the parties as expressed in the language of the agreement.  See id.


Crimson essentially asserts that a party has no right to indemnity for
attorney’s fees unless there is first a duty to defend, and argues that,
because Crimson did not have a duty to defend appellees, it had no duty to
indemnify appellees for attorney’s fees. 
The duty to defend and the duty to indemnify are “distinct and separate
duties.” D.R. Horton-Texas, Ltd. v.
Markel Int’l Ins. Co., Ltd., 300 S.W.3d 740, 743 (Tex. 2009).  One duty may exist without the other and,
thus, although a party may not have a contractual duty to defend another party,
it may still have a contractual duty to indemnify that party for defense costs.  Id.
at 743–44.  “[T]he duty to indemnify is
not dependent on the duty to defend” and there may be a duty to indemnify “even
if the duty to defend never arises.”  Id. at 741.  The duty to defend and the duty to indemnify
“are independent and the existence of one does not necessarily depend on the
existence or proof of the other.”  Id. at 745. This is true even when a party
is seeking indemnity for the cost of its defense.  See id.
at 742, 745 (remanding case to trial court on duty to indemnify issue in claim
for reimbursement of defense costs and settlement payment, after determining
that insurer owed no duty to defend); see
also Garcia v. Sky Climber, Inc., 470 S.W.2d 261, 269–70 (Tex. Civ.
App.—Houston [1st Dist.] 1971, writ
ref’d n.r.e.) (holding that attorney’s fees and court costs are recoverable
under general “hold harmless” indemnity agreement).  The applicability of each distinct duty must
therefore be analyzed individually.  In
the case before us, the only duty in question is Crimson’s duty to indemnify
appellees because that is the only duty imposed by the contract.

The fact that Crimson did not contract to defend appellees does not
release it from any contractual obligation that it has to indemnify appellees
for the cost of their defense in the PCA lawsuit.  We hold that appellees were not required to
prove that Crimson had a duty to defend them before they sought to be
indemnified for their defense costs. 
Accordingly, the trial court was not required to make any determination
about a duty to defend before determining whether Crimson had a duty to indemnify
appellees under the indemnity contract.  See D.R. Horton-Texas, Ltd., 300 S.W.3d
at 745.

We overrule this portion of Crimson’s first issue.

2.       Right to indemnity 

Crimson further argues that, even if
Crimson had a duty to indemnify appellees under the agreement, appellees failed
to establish as a matter of law that they were entitled to indemnity for their
attorney’s fees and costs arising out of the PCA lawsuit.  Specifically, Crimson asserts that appellees
were required to show that the PCA lawsuit against appellees “arose out of or
in connection with an action taken or omitted to be taken by [Crimson]” and
argues that PCA’s petition “failed to allege any improper acts or omissions by
[Crimson].”  Crimson also contends that its
“alleged failure to honor PCA’s contractual right of first refusal” was not
shown to be “improper or unlawful” and that there is no “causal connection”
between any alleged action or omission by Crimson and the PCA lawsuit.[5]


The plain language of the indemnity agreement does not
require the showing of any “improper” or “unlawful” act or omission by Crimson in
order for appellees to be entitled to indemnity.  The agreement also does not require a direct
or proximate causal relationship between any acts or omissions by Crimson and any
specific claims asserted against appellees. 
Rather, the broad language of the agreement between these parties
provides that Crimson will indemnify appellees for “all claims, liabilities,
losses, damages, and expenses (or actions in respect thereof), as incurred, related to or arising out of or in
connection with (i) actions taken or omitted to be taken by [Crimson],
their affiliates, employees or agents. . .”. (emphasis added).  To “relate to” simply means to “have
reference to,” “concern,” “pertaining to,” “associated with” or “connected
with.”  See E.I. Du Pont de Nemours and Co. v. Shell Oil Co., 259 S.W.3d
800, 806 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).   Likewise, the term “arising out of” “means
that there is simply a ‘causal connection or relation,’” or “but for
causation,” rather than either direct or proximate causation.  See
Utica National Ins. Co. v. American Indemnity Co., 141 S.W.3d 198, 203
(Tex. 2004).   “‘Connected with’ connotes
an even more general nexus” than “arise out of.”  See
Coastal Mart Inc. v. Southwestern Bell Telephone Co., 154 S.W.3d 839, 845
(Tex. App.—Corpus Christi 2005, pet. granted, judgm’t vacated w.r.m.).  “[T]he plain meaning of ‘arising from or
connected with’ is that” there must be “some nexus between” the actions taken
or omitted to be taken by the indemnitor “and the detriment for which indemnity
is sought” by the indemnitee.  See id. 

The record on summary judgment establishes some nexus between
acts or omissions by Crimson and the expenses incurred by appellees in defense
of PCA’s claims against appellees, and that PCA’s claims against appellees were
“related to or arising out of or in connection with” actions or omissions by
Crimson.  The Advisory Agreement, PCA’s
Fifth Amended Petition, and the unobjected-to portions of the affidavits of
Loehr, McMillan, and Manolis provide evidence that (1) Crimson entered into an
advisory agreement with Intermarket and paid fees to Intermarket for its work
on the Oak Tree transaction; (2) PCA filed a lawsuit against appellees in which
it made claims that “relate to,” “arise out of,” or are “in connection with”
Crimson’s acts of entering into the advisory agreement with Intermarket and
paying fees to Intermarket for its work on the Oak Tree transaction; and (3) appellees
suffered expenses defending themselves from PCA’s claims that “relate to,”
“arise out of,” or are “in connection with” Crimson’s acts of entering into the
advisory agreement with Intermarket and paying fees to Intermarket for its work
on the Oak Tree transaction.[6]
 This evidence is sufficient to support
appellees’ burden on summary judgment to establish as a matter of law that
their defense expenses in the PCA lawsuit were “related to or arising out of or
in connection with” actions or omissions by Crimson so as to entitle them to
indemnity for these expenses under the broad terms of this indemnity agreement.

We overrule this portion of Crimson’s first issue.

3.       Lack of damages

Crimson also argues that it had no duty to indemnify
appellees for their defense expenses in the PCA lawsuit because appellees
prevailed in that lawsuit and were not required to pay any damages to PCA.  Crimson asserts that a duty to indemnify does
not arise unless a plaintiff ultimately prevails on a claim covered by the
policy, citing to Don’s Building Supply
v. OneBeacon Ins. Co., 267 S.W.3d 20, 31, fn. 41 (Tex. 2008) and Comsys Info. Tech. Servs., Inc. v. Twin City
Fire Ins. Co., 130 S.W.3d 181, 190 (Tex. App.—Houston [14th Dist.] 2004,
pet. denied), and argues from this that a defendant is not entitled to recover
its defense expenses in indemnity if its defense is successful.

These cases are distinguishable from the present case by the
plain language of the indemnity agreements involved and stand for the unremarkable
proposition that indemnity for damages cannot be established until the damages
are established.  However, the indemnity
contract in the present case is broader than those in the cited cases; it does
not provide indemnity for damages only; it also provided indemnity for all
appellees’ losses and expenses.   Neither
of the cited cases stand for the proposition asserted by Crimson—that a
defendant who has contracted for indemnity for defense expenses, has no right
to indemnity for those expenses if it is successful in its defense.  Cf.
Patch v. Aramco Oil Co., 845 F.2d 571, 573 (5th Cir. 1988) (commenting that
indemnitee would not be held “harmless” where it was not found negligent by
jury unless entitled to recover costs of litigation).  We hold that appellees are not precluded from
recovery of their defense expenses by their ultimate success in the PCA
lawsuit.

We overrule this portion of Crimson’s first issue.

4.       Conspicuousness and express negligence
requirements

Crimson’s final argument is that it
had no duty to indemnify appellees because the indemnity agreement failed to
meet the express negligence and conspicuousness requirements.  

The conspicuousness requirement
mandates that something appear on the face of an indemnity agreement to attract
the attention of a reasonable person.  See Dresser Indus., Inc. v. Page Petroleum,
853 S.W.2d 505, 508–09 (Tex. 1993). The express negligence requirement is not
an affirmative defense, but merely a rule of contract interpretation providing
that parties seeking to indemnify the indemnitee against liability for its own
negligence, must clearly state that intent within the agreement itself.  See
Fisk Elec. Co. v. Constructors & Associates, Inc., 888 S.W.2d 813,
814–15 (Tex. 1994); Ethyl Corp. v. Daniel
Constr. Co., 725 S.W.2d 705, 708 (Tex. 1987).  

We disagree with both of Crimson’s
challenges.  The indemnity agreement in
this case is on a separate page from the main agreement, has its own heading,
and includes its own signature line. 
Similarly, the indemnity agreement clearly sets out the intent that
Crimson indemnify appellees for “all” losses and expenses absent a “final
judicial determination” that the losses or expenses resulted “from actions
taken or omitted to be taken by [appellees] in bad faith, fraud, deceit, breach
of contract or [were] due to such [appellees’] wantonness, neglect, negligence
or gross negligence.”  There is no such
final judicial determination in this case. 
We hold that the indemnity agreement does not violate either the
conspicuousness or express negligence requirement.

We overrule this portion of Crimson’s
first issue. 

Having overruled all of Crimson’s arguments pertaining to the
grant of appellees’ summary judgment on the breach of indemnity contract claim,
we overrule Crimson’s first issue.

 




 

C.      Damages
and Attorney’s Fees Awarded in Breach of Indemnity Contract Claim

In its second issue, Crimson first
argues that the trial court erred in the damages awarded in the summary
judgment on appellees’ breach of indemnity contract claim because there was no
evidence that the amount of attorney’s fees incurred in the PCA lawsuit was
reasonable.  Crimson then argues that,
because appellees were not entitled to the attorney’s fees awarded as damages,
they were not entitled to the award of attorney’s fees in this lawsuit. 

We interpret Crimson’s first assertion as an argument that
appellees’ summary judgment proof was insufficient to prove the amount of
damages as a matter of law because it did not include any evidence establishing
the reasonableness of the attorney’s fees claimed as expenses in the PCA
lawsuit.[7]  Appellees do not dispute that they provided
no evidence of the reasonableness of their attorney’s fees damages on summary
judgment, but respond that they only needed to prove the amount of expenses
that they incurred in defense of their suit, not whether the attorney’s fees
that made up a portion of those expenses were reasonable.  Alternatively, appellees argue that the trial
court could have taken judicial notice of the usual and customary fees for the
services provided, relying on First
National Acceptance Company v. Bishop, 187 S.W.3d 710 (Tex. App.—Corpus
Christi 2006, no pet.).

We disagree with the latter contention. Generally, the
reasonableness of attorney’s fees is a question of fact that must be determined
by the fact-finder and be supported by competent evidence.  See
Great Am. Reserve Ins. Co. v. Britton, 406 S.W.2d 901, 906 (Tex.
1966).  First National’s holding ultimately rests on section 38.004 of the
Texas Civil Practice and Remedies Code which permits the trial court to take
judicial notice of the usual and customary fees.  See
Tex. Civ. Prac. & Rem. Code Ann. §
38.004 (Vernon 2008); see also id.§
38.003 (providing rebuttable presumption that usual and customary fees for
claim of type described in section 38.001 are reasonable).  However, that section is not
applicable in a request for attorney’s fees that is not made under section
38.001 of the Texas Civil Practice and Remedies Code.  See id.;
Tex. Civ. Prac. & Rem. Code Ann. §38.001
(Vernon 2008); Charrette v. Fitzgerald,
213 S.W.3d 505, 515 (Tex. App.—Houston [14th Dist.] no pet.); Hasty, Inc. v. Inwood Buckhorn Joint
Venture, 908 S.W.2d 494, 503 (Tex. App.—Dallas 1995, writ denied).  Because the attorney’s fees at issue were not
awarded under section 38.001, but rather as damages, then the trial court could
not take judicial notice of the usual and customary fees in making its
award.  

          Regarding appellees’ broader argument
that they were not required to show the reasonableness of the attorney’s fees
recovered in indemnity, Crimson cites to several cases which, although
involving the payment of attorney’s fees pursuant to an indemnity clause,
nevertheless either required that there be a showing that the fees be
reasonable or reviewed the record to determine if there was evidence of
reasonableness.  See Seiber & Calicutt, Inc. v. La Gloria Oil & Gas Co., 66
S.W.3d 340, 350–51 (Tex. App.—Tyler 2001, pet. denied);  Tenneco
Oil Co. v. Gulsby Engineering, Inc, 846 S.W.2d 599, 607 (Tex. App.—Houston
[14th Dist.] 1993, writ denied); Carroll
v. Paetznick, 603 S.W.2d 381, 383 (Tex. Civ. App.—Austin 1980, no writ).
 This Court has done likewise.  See
Devon SFS Operating, Inc. v. First
Seismic Corp., No. 01-04-00077-CV, 2006 WL 374257, at *11-12 (Tex.
App.—Houston [1st Dist.] 2006, no pet.) (memo op.).   Here, the attorney’s fees are within the
control of the parties seeking indemnification and therefore are subject to a
reasonableness test.  “Reasonableness is
the determining factor for attorney’s fees,” which are governed under the Rules
of Professional Conduct.  Id. at 12.   

          We hold that, because appellees did
not provide proof of the reasonableness of the attorney’s fees claimed as
damages in the breach of indemnity contract claim, appellees failed to prove,
as a matter of law, the sum to which they were entitled as damages.  We grant Crimson’s second issue.  We reverse the award of damages in the breach
of indemnity contract claim (i.e.,
the attorney’s fees and costs[8]
incurred in defense of the PCA lawsuit), and, accordingly, the award of
attorney’s fees in this suit.  See State Farm Life Ins. Co. v. Beaston,
907 S.W.2d 430, 437 (Tex. 1995) (requiring that party both prevail on cause of
action for which attorney’s fees are recoverable and recover damages before
attorney’s fees may be awarded under section 38.001).  We remand this cause to the trial court for a
determination of appellees’ damages in the breach of indemnity contract claim
(costs and reasonable attorney’s fees incurred in defense of the PCA lawsuit)
as well as a determination of attorney’s fees, if any, to be awarded in this
suit.

D.      Take-nothing Summary
Judgment on Declaratory Judgment Claim

          In its final issue, Crimson complains
that the trial court erred in entering a take-nothing summary judgment against
it on Crimson’s “duty to defend” declaratory judgment claim rather than
entering a declaratory summary judgment in Crimson’s favor.  Crimson specifically asserts that its claim
for a declaratory judgment on its “duty to defend” liability under the
indemnity agreement presented an issue beyond that raised in appellees’ claims
for which it would have “ongoing exposure under the indemnity portions of the
Advisory Agreement” and thus a declaratory judgment on its duty to defend under
the agreement would have been proper.  See Indian Beach Prop. Owners’ Ass’n v.
Linden, 222 S.W.3d 622, 702 (Tex. App.—Houston [1st Dist.] 2007, no pet.)
(holding that declaratory judgment counterclaim seeking interpretation of deed
restrictions, filed in lawsuit regarding breach of deed restrictions, was not
simply denial of plaintiff’s cause of action, but affirmative claim for relief,
and therefore proper subject of declaratory judgment;  deed restrictions involved ongoing and
continuous relationship between parties and declaration would define parties’
obligations under deed restrictions in future).  

           
Declaratory judgments are reviewed under the same standards applicable
to other judgments; thus, the denial or grant of a declaratory judgment in a
summary judgment is reviewed under summary judgment standards.  See      Tex. Civ. Prac. & Rem. Code
Ann. § 37.010 (Vernon 2008); Lidawi
v. Progressive County Mutual Ins. Co., 112 S.W.3d 725, 730 (Tex.
App.—Houston [14th Dist.] 2003, no pet.). Although a denial of summary judgment is not normally
reviewable, we may review such a denial when both parties move for summary
judgment and the trial court grants one and denies the other.  See Tex. Mun. Power Agency, 253 S.W.3d
at 192. In our review of such cross-motions, we review the summary judgment
evidence presented by each party, determine all questions presented, and render
judgment as the trial court should have rendered.  Id. (citing Comm’rs Court v. Agan,
940 S.W.2d 77, 81 (Tex. 1997)).  

          A trial court may not render a
declaratory judgment unless there is a justiciable controversy between the
parties that will actually be resolved by the declaration sought.  See Tex. Civ. Prac. & Rem. Code Ann. § 37.008 (Vernon 2008); Bonham State
Bank v. Beadle, 907 S.W.2d 465, 467 (Tex. 1995).  A “justiciable controversy” requires a “real
and substantial controversy involving genuine conflict of tangible interests
and not merely a theoretical dispute.” Id.
(internal quotations and citations omitted). 
We have already held that Crimson’s duty to indemnify appellees
for expenses, including attorney’s fees, is distinct from any duty to defend
and that the dispute between the parties involved only the duty to
indemnify.  There is no justiciable
controversy between the parties regarding any duty to defend.  We hold that Crimson was not entitled to a
declaratory judgment and the trial court properly entered a take-nothing
summary judgment against Crimson on this claim. 
See Tex. Civ. Prac. & Rem. Code Ann. § 37.008; Beadle, 907 S.W.2d at 467.  

We overrule Crimson’s third issue. 




 

CONCLUSION

          We
reverse the trial court’s award of damages of attorney’s fees and costs in the
PCA lawsuit, and the award of attorney’s fees for the breach of indemnity
contract case. We remand this cause to the trial court for further proceedings
in accordance with this opinion.  We
affirm the trial court’s judgment in all other respects.   

 

 

                                                                   Jim
Sharp

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Bland and Sharp.











[1]
          During the course of the
proceedings which form the basis of this appeal, Gulfwest Energy became known
as Crimson Exploration, Inc.  For the
sake of consistency, we will refer to appellant as Crimson throughout.





[2]
          McMillan was the senior vice-president of Intermarket and was actively
involved in providing services to Crimson on behalf of Intermarket.  

 





[3]
          Crimson paid a portion of the fees and expenses incurred by Manolis,
but there was still an additional portion outstanding after the conclusion of
the case.

 





[4]
          The claims against Manolis were dismissed for want of personal
jurisdiction; the claims against Intermarket, Loehr, and McMillan were resolved
by a summary judgment in their favor.





[5]           Under this issue, Crimson also challenges a
number of documents attached to appellees’ motion for summary judgment, and
argues that the only evidence by appellees that can properly be considered is (1)
the advisory agreement; (2) PCA’s pleadings; and (3) and “portions” of the
affidavits of appellees’ witnesses, “subject to [Crimson’s] objections.”  Crimson does not identify in its brief what
“portions” of the affidavits are inadmissible, but the only objections
discussed are that affidavits are not competent evidence of the “nature of
PCA’s claims” and these witnesses did not have “adequate personal knowledge to
testify on the issue of PCA’s state of mind when it filed its pleadings in the
PCA lawsuit.”  We note that, before the
trial court, Crimson only raised the first of these objections and made no
objection to a lack of knowledge by the witnesses as to “PCA’s state of mind.”
In fact, in its motion for reconsideration, Crimson specifically asserted that
the affidavits of Manolis, Loerhr, Myers and McMillan were “admissible summary
judgment evidence.”  In any case, review
of the affidavits in question does not reveal any testimony by McMillan, Loher,
or Myers as to the nature of PCA’s claims or “PCA’s state of mind” when PCA
filed its lawsuit.  Manolis’s affidavit,
however, includes the following sentence, which states a legal conclusion
relating to PCA’s claims: “In the PCA Suit, PCA alleged claims against IML
related to, arising out of and in connection with statements allegedly made by
me in the April/May 2004 timeframe during settlement negotiations of a fee
dispute between PCA and [Crimson].”  Crimson
also complains of the inadmissibility of attached pleadings by Intermarket in
the PCA lawsuit and certain deposition testimony.  

 

We need not
determine whether the above portion of Manolis’s affidavit, the attached
Intermarket pleadings, or the deposition testimony were proper summary judgment
evidence because the unobjected-to portions of the affidavits, Advisory
Agreement, and PCA’s Fifth Amended Petition are sufficient to support appellees’ motion for summary judgment on the
breach of indemnity contract claim. 

 





[6]
          Crimson has also directed us to deposition testimony by Manolis in
which Manolis testified that Crimson honored PCA’s right of first refusal.  (Manolis went on to explain that Crimson’s
interpretation of PCA’s right of first refusal was that PCA had a non-exclusive right to bring in
investors, and, it was therefore Crimson’s position that, because PCA did bring
in investors, PCA’s right of first refusal was honored.)  However, even if we assumed that Crimson
actually honored PCA’s right of first refusal, there was still evidence of a
causal connection between other acts of Crimson (the entering into the advisory
agreement with Intermarket and the payment of fees to Intermarket for the Oak
Tree transaction) and the PCA lawsuit.  





[7]
          Appellees assert that Crimson
has failed to preserve this issue because Crimson did not make a specific
challenge in either its response to the motion for summary judgment or its
motion for reconsideration to the lack of evidence of the reasonableness of the
attorney’s fees sought as damages. 
However, Crimson was not required to object in the trial court to the
insufficiency of appellees’ summary judgment proof supporting the award of
attorney’s fees as damages in order to preserve this challenge for appellate
review; such a complaint may be raised for the first time on appeal. See Rhone-Poulenc, Inc. v. Steel, 997
S.W.2d 217, 223 (Tex. 1999) (holding that, on appeal, a non-movant “need not
have answered or responded to the motion [for summary judgment] to contend that
the movant’s summary judgment proof is insufficient as a matter of law to
support summary judgment.”); City of
Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678 (Tex. 1979)
(“Summary judgments must stand on their own merits, and the non-movant’s
failure to answer or respond cannot supply by default the summary judgment
proof necessary to establish the movant’s right.”).





[8]
          Because the evidence at trial also did not establish what portion of
the damages awarded was costs and what portion was attorney’s fees, we vacate
the entire amount of damages awarded and instruct the trial court to segregate
in its judgment any award of costs incurred in the PCA lawsuit from any award
of attorney’s fees incurred in the PCA lawsuit.